## SALDIVERI v. STATE

[No. 287, September Term, 1957.]

*Decided June 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Hugh J. Monaghan, II,* with whom were *Morgan L. Amaimo, Robert T. Barbour* and *Bennett Crain* on the brief, for appellant.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *George W. Bowling, State's Attorney for Charles County,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Charles County by Joseph Saldiveri (the defendant) from a conviction for an unnatural and perverted sexual practice upon an eight-year old girl.

The girl, a hospital patient, was confined to her bed with a fractured leg. On Sunday afternoon, June 23, 1957, she was visited by her mother. At about five-thirty the mother went to a restaurant for supper. When she returned to the hospital about a half hour later, the daughter, who had previously been quite happy and contented, was very frightened, her eyes were bulging, her leg was throbbing, and she was crying. After calming down, the girl told her mother that the defendant had entered her room, kissed her, put his finger in her vagina and his penis in her mouth. When he heard nurses approaching, he left the room for a few minutes, but returned and repeated the same acts.

A doctor, who examined the girl soon afterwards, found that the area around the child's vagina was red and irritated. He was not certain as to the cause of the irritation and admitted it could have been caused by "tight pants." The girl, however, was wearing only loose pajamas.

The defendant, a fifty-nine year old grandfather, was employed as a bartender and had been drinking heavily for several days before the offense. On the day referred to he was very drunk and, after a brief incarceration in jail, was taken to the same hospital in which the girl was a patient. He was admitted at about three o'clock in the afternoon, and was placed in the room adjoining that of the girl. In order to quiet him, he was given three and three-quarter grains of

sodium amytal, (the trade mark for a sedative, commonly known as a "truth serum," hereinafter referred to as amytal"). For a while, he remained quietly in his room, although on one occasion he grabbed the hand of a nurse who went into his room.

The defendant testified that the only thing he remembered was waking up in jail on Monday morning. He also said that he had no recollection of having been in the hospital on Sunday. However, while he was still in the hospital he carried on an intelligent conversation with the sheriff. And, after he had been removed from the hospital back to the jail, he told the sheriff and some of the deputies that he had been in the girl's room and talked to her, but denied that he had molested her. Several witnesses, who removed the defendant to another part of the hospital, prior to his transfer to jail, testified that he appeared to understand and comprehend the situation and his surroundings despite the fact that his breath was reeking with the odor of alcohol.

Wherever it is appropriate, other pertinent facts concerning this case will be referred to in connection with the subsequent discussions of the points or questions of law posed by this appeal. The defendant in his brief and at the oral argument assigned numerous reasons why his conviction should be reversed. All of the pertinent reasons assigned, depending on the substance thereof, have been assembled into five principal categories, but the questions stated will be considered separately when it appears to be expedient.

(i)

The trial court did not err when it permitted the mother to testify concerning the details of the child's complaint to her. The defendant contends that his objection to the testimony of the State's first witness—the mother—concerning the particulars of the girl's complaint, should have been sustained. He relies only on *Williams v. State*, 214 Md. 143, 132 A. 2d 605 (1957), and the cases therein cited to support his contention.

The State in its brief also relied on the *Williams* case, which, at p. 153, stated that: "In trials before the trial judge,

sitting without a jury, the order of proof is not important." The State also undertook to review the Maryland cases on the subject, citing *Parker v. State,* 67 Md. 329, 10 A. 219 (1887); *Legore v. State,* 87 Md. 735, 41 A. 60 (1898); *Blake v. State,* 157 Md. 75, 145 A. 185 (1929); *Green v. State,* 161 Md. 75, 155 A. 164 (1931); and *Murphy v. State,* 184 Md. 70, 40 A. 2d 239 (1944). In the *Parker* case, the fact that a complaint had been made was held admissible, but the details and circumstances were not. In the *Legore* case, where the prosecutrix had delayed making complaint until she could make it to her husband, the issue was whether the evidence had been properly admitted and submitted to the jury. In the *Murphy* case, where the evidence amounted to no more than the making of a complaint by the prosecutrix that she had been raped, without stating any of the details of the assault, the question was the admissibility of such evidence.

In the *Blake* case, *supra,* we held that on a prosecution for rape, not only may it be shown that the prosecutrix made a complaint shortly after the commission of the offense, but the nature of the complaint may also be stated for the purpose of showing the character of the act complained of. In rejecting the older practice of restricting the answer of the witnesses to the general fact that a complaint had been made, we said at p. 79:

> "It has not been the practice in this state to restrict the testimony of a complaint to a mere yes or no answer. Some statement of the nature of the complaint has been regarded as admissible, at least for the purpose of showing the character of the act complained of, and we think this is a proper application of the rule. And it seems clear that the line of distinction beyond that cannot be one rigidly fixed, because of the variations in cases and their details."

The *Green* case, *supra,* involved the admissibility of the nature of an assault as stated in a complaint, and there is a

thorough discussion therein of the whole subject now under consideration. At p. 82, we said:

> "There is great conflict and confusion of cases and authority, but the better rule, and the one more in conformity with our practice and decisions, is that, if the prosecutrix has testified to a violent assault, the fact of the making of complaint within a reasonable time under the circumstances is original evidence, and may be shown to prevent the inference that the woman did in fact maintain a silence inconsistent with her narrative at the trial; *and if her testimony of the commission of the alleged crime be impeached by witnesses or by a cross-examination based on the defence that she consented or that her evidence is false, the terms and details of the complaint are admissible, preferably in rebuttal* (a), as corroborative evidence, if made recently (b) after the commission of the alleged crime." (Emphasis added.)

The *Green* case, though not otherwise in point here, laid down the rule that, if the testimony of the prosecuting witness is impeached on cross-examination or by other witnesses, the *details* of a complaint to another person are admissible, preferably on rebuttal.

In the instant case the defendant cross-examined the prosecuting witness extensively in an effort to impeach her, so, under the ruling in the *Green* case, *supra,* the mother could have been recalled in any event to give the details of the complaint in rebuttal. For this reason, we think there was no prejudicial error when the trial court permitted the mother, who was the first witness, to testify in chief as to the details of the complaint. However, although it is true that in a trial before a court instead of a jury the order of proof is generally not important (*Williams v. State, supra*), it is, nevertheless, the better practice, whenever possible, to introduce evidence, either before a jury or a court, in the customary order generally followed so as to safeguard against the likelihood of confusion as well as prejudice.

(ii)

The State was under no obligation in this case to show the capacity of the prosecuting witness to testify. The defendant insists that the State was required to show that the girl, who was nine years old when she testified, understood the significance of taking an oath, and that the fact of capacity could not be presumed when the girl was under fourteen years of age. He cited 2 *Wigmore, Evidence* (3d ed. 1940) § 508. But in § 507 *Wigmore* states that the question of competency is one that is within the discretion of the trial court. In Maryland the question of the capacity of children to testify is ordinarily within the discretion of the trial court. *Freeny v. Freeny*, 80 Md. 406, 31 A. 304 (1895). See also 2 *Wigmore, ibid.*, (1957 Supplement) § 507, pp. 159-60, citing many recent sex offense cases in which the testimony of children ranging in age from four to eleven was admitted in evidence under the discretion rule. Even if we assume, without deciding, that the State had the burden of showing the competency of the prosecuting witness, this burden was met when the defendant qualified the girl by asking her on cross-examination: "Do you know what the meaning of taking an oath is?", and she replied, "Yes." There is nothing in the record to show that the defendant objected to the girl's capacity to testify. Ordinarily, this Court will not decide any point or question of law which was not raised and decided by the lower court. Maryland Rule 885; *Kares v. State*, 215 Md. 396, 137 A. 2d 712 (1958); *Jackson v. State*, 214 Md. 454, 135 A. 2d 638 (1957); *Basoff v. State*, 208 Md. 643, 119 A. 2d 917 (1956). Furthermore, the question of the capacity of a witness must be raised before the testimony is received into evidence. 3 *Wharton, Criminal Evidence* (12th ed. 1955) §§ 741, 763; 1 *Underhill, Criminal Evidence* (5th ed. 1956) § 250.

The defendant also contends that it was error for the lower court to refuse to let Dr. Truitt, who had had extensive experience with children, to state his opinion as to whether children of eight years are subject to suggestion. Obviously, this was an attempt to show the incapacity of the prosecuting witness to testify by the use of an expert opinion of a doctor

who had not even examined her. The law recognizes the capacity of children generally to testify. Once a child's testimony is admitted, which, as previously stated, is a matter within the discretion of the trial judge, the weight to be given to the child's evidence is a matter for the trier of fact to decide. See 2 *Wigmore, ibid.*, §§ 505-509; 1 *Underhill, ibid.*, § 257. It was not improper for the trial court to deny the defendant's psychiatrist an opportunity to state his opinion as to the susceptibility to suggestion of children generally.

(iii)

Although the State did so in some respects, it was not necessary to corroborate the testimony of the prosecuting witness. The defendant contends that the prosecuting witness encouraged the defendant when she neither cried out nor complained during the initial act, nor when he left the room the first time, and that she was therefore an accomplice, and her testimony should have been corroborated. There is no merit to either of these contentions. Under the circumstances in this case, the prosecutrix was a victim and not an accomplice. See *Lusby v. State*, 217 Md. 191, 141 A. 2d 893 (1958), and the cases therein cited, in which we held that a seventeen year old participant in an incestuous relationship was not an accomplice. To be an accomplice one must freely and willingly consent. As we pointed out in *Gregoire v. State*, 211 Md. 514, 128 A. 2d 243 (1957), there is a distinction between mere submission and actual consent. At p. 520, we said:

> "Consent, in law, means a voluntary agreement * * * to do something proposed by another. 'Consent' differs very materially from 'assent.' The former implies some positive action and always involves submission. The latter means mere passivity or submission, which does not include consent."

The defendant also advanced the novel theory that, once the State attempted to corroborate the girl's testimony with other evidence, it waived the right to deny that the girl was an accomplice, and that corroboration was necessary. The

defendant cited no authority for this proposition and we know of none. It would be wholly unreasonable to hold that a girl's status as a victim suddenly shifted to that of an accomplice the moment the State produced corroborative evidence. Furthermore, the defendant's reliance on the procedure often invoked in actions for damages where the doctrine of *res ipsa loquitor* is relied upon and there is also proof of causes for which the defendant was not responsible, as exemplified in *Maszczenski v. Myers,* 212 Md. 346, 129 A. 2d 109 (1957), is not in point. The procedure in such cases is based on wholly different policies and considerations which are not applicable in criminal cases.

(iv)

Since there was insufficient proof that the defendant was insane at the time the offense was committed, we do not reach the question as to who has the burden of proof as to sanity in this case. The defendant, having filed a plea of not guilty by reason of insanity, insists that when the State introduced evidence regarding his consumption of alcohol and the administration of a large dose of amytal, it was introducing evidence of his insanity which shifted the burden of proving sanity to the State. He also argues that he was in fact legally insane at the time of the offense on the theory that the offense was induced primarily by the dosage of amytal given to him at the hospital.

The psychiatrist for the defense testified that, if the defendant committed the offense, he did not know right from wrong because of the alcohol he had imbibed and the amytal administered to him. The psychiatrist had not examined the defendant until more than three months after the offense; yet solely on the basis of the hospital records and his subsequent observations, he was of the opinion that the defendant was not a sexual pervert, and that consequently he was probably insane in that he did not know right from wrong. The psychiatrist further testified that, although a dosage of amytal generally had a relaxing effect on a patient, it was likely to disturb an alcoholic. But he admitted that "larger

doses of alcohol and amytal tend to repress rather than excite the sexual urge."

The State produced two psychiatrists. One was the superintendent of the Spring Grove State Hospital where the defendant was confined for two months immediately following the offense. Although the hospital records on which he based his opinion were not complete, he testified that the defendant was not insane at the time of the offense. He also stated that the probable effect of amytal would be a soporific one, but his experience with the drug had been limited to controlled situations in the armed forces.

The other State psychiatrist, a former superintendent of Crownsville, had had more experience with the use of amytal. He testified that it was undesirable to use the drug on alcoholic patients because it enhanced their depressive state, but he was of the opinion that the dosage administered would not make a person insane. This psychiatrist, who had been present at two staff meetings at Spring Grove during which the defendant was examined, expressed the opinion that the defendant "had sufficient reason to enable him to distinguish between right and wrong and know the nature and consequences of his act as applied to himself." Furthermore, he stated that the defendant demonstrated that he knew right from wrong and realized the culpability of his acts when he was listening for the approach of a nurse while he was in the girl's room. There was also documentary evidence in the form of two letters signed by the superintendent of Spring Grove to the effect that the defendant was a responsible agent when admitted to that institution and was responsible when the letters were written (July 23, 1957, and August 26, 1957), and able to participate in his defense.

The rule in this State, as laid down in *Spencer v. State*, 69 Md. 28, 13 A. 809 (1888), is that the defendant is presumed to be sane, if, at the time of the commission of the alleged offense, he has capacity and reason sufficient to enable him to distinguish between right and wrong, and understand the nature and consequences of his act as applied to himself. See also *Taylor v. State*, 187 Md. 306, 49 A. 2d 787 (1946); *Thomas v. State*, 206 Md. 575, 112 A. 2d 913

(1955); *Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955); and *Cole v. State,* 212 Md. 55, 128 A. 2d 437 (1957), in which the rule was cited with approval. The rule was, of course, first formulated by the House of Lords in the celebrated English case of *Regina v. McNaghten,* 10 Cl. & Fin. 200 (1843), and still prevails in a great majority of the American jurisdictions, although it was repudiated in the District of Columbia in *Durham v. United States,* 214 F. 2d 862 (1954), and *Stewart v. United States,* 214 F. 2d 879 (1954).

As in the *Thomas* case, *supra,* there is also a question here as to who has the burden of proof when insanity is pleaded as a defense to a criminal charge. However, in this case there is even less proof of the insanity of the defendant than there was in the *Thomas* case.

Although all of the American jurisdictions are agreed that there is a presumption that all persons are sane and responsible for their acts at the time an offense is committed, they are about evenly divided on the question of who has the burden of proving insanity in criminal cases. Some of the states have ruled that the burden of proof is upon the defendant who pleads insanity, which means that the defendant is required to establish his defense of insanity *by a preponderance of the evidence,* and proof beyond a reasonable doubt is not required. Other states have ruled that the burden is on the prosecution, which means that the defendant is required to produce only enough evidence of a mental disorder to overcome the presumption of sanity, and when this has been done, the State is required to prove sanity *beyond a reasonable doubt.*[1] But in the instant case the defendant would have us go even further than the rule placing the burden on the State requires. He has adroitly seized upon a *part* of the quotation from the case of *Tatum v. United States,* 190 F. 2d 612 (1951), cited in the *Thomas* case (pp. 587-88) for another purpose, to bolster his theory of what the rule

---

1. There is a thorough discussion of the question in the casenote on *Thomas v. State, supra,* entitled "Burden of Proof of Insanity in Criminal Cases," in 15 Md. L. Rev. 157 (1955).

should be. The theory he advances is that when any proof of a mental disorder has been introduced by the State—he asserts that the fact that he was saturated with alcohol and had had an overdose of amytal was such proof—then the burden of proving sanity beyond a reasonable doubt devolved upon the State forthwith, and the defendant is not thereafter required to overcome the presumption. But his theory is definitely not the rule even in those states which place the burden of proving sanity on the prosecution.

Regardless of the merits of the respective rules, it is evident that in this case the defendant could have been convicted under either rule. Although there was evidence of drunkenness and peculiar behavior on the part of the defendant, and other evidence that he had been administered a large dose of amytal, there was no proof of a mental disorder as such until the defendant's psychiatrist was called as a witness for the defense and testified that in his opinion the defendant did not know right from wrong at the time he committed the offense. In rebuttal, the State produced two well known psychiatrists, both of whom testified to the effect that the defendant was a responsible agent at the time the offense was committed. Under either rule it is clear that the evidence was insufficient to support a finding of insanity.

In the *Thomas* case, *supra,* even though we stated that the trial court's advisory instruction to the jury to the effect that the burden of proof was on the defendant, we decided nothing other than that there was not sufficient proof of a mental disorder. Apparently we did not *intend* to decide who had the burden of proving insanity in that case. In any event, we did not actually reach that question there, and certainly we do not reach it here. Thus, regardless of who had the burden of proof in this case, the trial court found the defendant legally sane and guilty of the offense charged. Since there was legally sufficient evidence from which the court could and did find the defendant sane, we are unable to rule that its finding was clearly erroneous. Maryland Rule 741 c.

On the question of drunkenness, it is well settled that voluntary drunkenness is generally not a defense to a crime. *Chisley v. State,* 202 Md. 87, 107, 95 A. 2d 577 (1953). See

also *Perkins, Criminal Law* (1957) 777-95; 1 *Wharton, Criminal Law and Procedure* (1957), § 44; and *Clark* and *Marshall, Crimes* (5th ed. 1952) §§ 89-96. On the other hand, involuntary intoxication caused by the unskilled administration of a drug by a physician ordinarily constitutes a valid defense. See *Hale, Pleas of the Crown* *32. *Perkins, ibid.,* 785 states that "[s]uch intoxication is involuntary, because the patient is entitled to assume that an intoxicating dose would not be prescribed, but lack of skill by the doctor is not indispensable to this result." In the instant case, however, the psychiatric testimony showed that the drug administered had no *intoxicating* effect upon the defendant. Cf. *Perkins v. United States,* 228 F. 408 (4th Cir. 1915); *Pribble v. People,* 49 Colo. 210, 112 P. 220 (1910).

(v)

The motion of the defendant for a directed verdict of "not guilty" was properly refused, and there was legally sufficient evidence from which the trial court could find the defendant guilty as charged. As a reason why the lower court should have granted his motion for a directed verdict, the defendant cited *only* Maryland Rule 741 b and nothing more, presumably implying that the evidence was "legally insufficient to justify his conviction."

Finally, the defendant contends that the verdict of the lower court was "clearly erroneous." What we have said herein shows that the verdict was proper.

*Judgment and sentence affirmed, with costs.*