## WATTS *v.* STATE

[No. 28, September Term, 1960.]

*Decided October 18, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Eugene A. Alexander, III,* for appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with

whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris* and *E. Thomas Maxwell, Jr., State's Attorney* and *Assistant State's Attorney of Baltimore City,* respectively, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was convicted of robbing a Baltimore bank. Through counsel, he relied upon a special plea of not guilty by reason of insanity. The first contention raised on appeal is that, although the defendant committed the acts charged, he was insane "within the purview and meaning of modern enlightened medical, psychiatric and legal evaluation of human behavior and therefore not responsible for the offense committed." Dr. Nelson, a qualified and experienced psychiatrist on the medical staff of the Supreme Bench, testified that the defendant at the time of the commission of the alleged offense had the capacity to distinguish between right and wrong and to appreciate the nature and consequences of his acts. She based her conclusion upon the medical reports available to her and upon an interview with the defendant. She stated that in her opinion the defendant was sane, her impression being that he had a sociopathic personality disturbance, an anti-social reaction, and an addiction to alcohol. When pressed on redirect examination with the fact that in 1958 at St. Elizabeth's Hospital in Washington he had been found to have had "an acute brain syndrome associated with intoxication with psychotic reaction", she replied that "[t]his is an acute and temporary type of illness." The very next entry showed that on discharge he was considered as having recovered from the psychotic reaction and was considered competent. She stressed the fact that the present offense was committed within forty-eight hours after he had escaped from the hospital and that he could not have precipitated an acute alcoholic psychosis in that time, even though drinking heavily and taking luminal during the period following his escape. We think there is no evidence in the case that would support a finding of insanity under any test, enlightened or otherwise, but certainly not under the established test of sanity to which we have consistently adhered. See *Stansbury v. State,* 218

Md. 255, 262, *Saldiveri v. State,* 217 Md. 412, 422, and cases cited.

The appellant contends, however, that the trial court erred in permitting Dr. Nelson "to base her summary and conclusions, in part, on the studies and conclusions of Dr. Ainsworth". Dr. Ainsworth was the Chief Psychologist of the Medical Department of the Supreme Bench. Dr. Nelson testified that she and Dr. Ainsworth "work as a team", that they each examined the patient and agreed in their conclusions. Presumably the patient was referred to the Medical Department by the court. Both Dr. Nelson and Dr. Ainsworth were summoned by the State, but Dr. Ainsworth was not called to testify. It is not contended that there was any error in permitting Dr. Nelson to consider the clinical and other records furnished from several Washington hospitals where the appellant had been a patient, nor to the abstract of his record furnished by St. Elizabeth's Hospital. Indeed, the abstract was supplied by counsel for the appellant. But the appellant objected below, and presses the objection here, to the use by Dr. Nelson of "Dr. Ainsworth's study" in arriving at her own conclusions. The precise nature of this study is not shown, but it seems clear that it was confined to psychological tests. Dr. Nelson testified that "[b]oth psychiatric evaluation and psychological testing reveal the patient to be emotionally immature and to lack a sense of responsibility. * * * His performance on an intelligence test placed him toward the upper limits of the Bright Normal level of intellectual function. There is no evidence of a psychotic process, severe psychoneurosis or organic deficit." She came to this conclusion "on the basis of the whole picture, including having seen the patient and any data that I had in the chart that we had upstairs", including "the defendant's past medical history." She testified that "[t]ests of his personality, the more or less routine type, were done by Dr. Ainsworth." Evidently the results of these tests were entered in the chart by Dr. Ainsworth.

It seems to be the general rule that a medical expert may not base his opinion upon the conclusions of other experts, as distinguished from facts established or assumed. Cf. *Harris*

*v. Hipsley,* 122 Md. 418, 433, and *Baltimore & Ohio R. R. Co. v. Zapf,* 192 Md. 403, 411. But the prohibition does not extend to data of an objective nature duly entered in hospital or similar records, even though the tests employed may require a considerable measure of skill and judgment for proper evaluation. *Wolfinger v. Frey,* 223 Md. 184, 191, 192. Nor does it extend to data supplied by a nurse and attendant. *Yellow Cab Co. v. Henderson,* 183 Md. 546, 553. But if we assume, without deciding, that Dr. Nelson could not properly base her diagnosis upon the conclusions of Dr. Ainsworth in the instant case, we find no reversible error in the court's ruling. It does not appear that Dr. Nelson was relying upon a conclusion of Dr. Ainsworth, as distinguished from objective data duly recorded, and in any event it is clear that Dr. Nelson's opinion was based upon her own examination of the patient and her own analysis of the patient's personality. If Dr. Ainsworth entertained the same opinion as to the appellant's personality, that opinion was merely cumulative and coincidental. Cf. *Damm v. State,* 128 Md. 665, 673.

*Judgment affirmed.*