BALDWIN *v.* STATE

[No. 6, September Term, 1961.]

410

*Decided October 11, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Edward T. Conroy* and *Joseph A. DePaul,* for appellant.

*Lawrence F. Rodowsky, Assistant Attorney General,* with
whom were *Thomas B. Finan, Attorney General, William L.
Kahler* and *Francis X. Gaegler, State's Attorney* and *Assist-
ant State's Attorney,* respectively, for Prince George's County.
·on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

· The defendant was indicted on a charge of murdering his
wife.  He pleaded not guilty and not guilty by reason of in-

sanity. In response to issues the jury found him sane at the time of the commission of the offense and sane at the time of trial, and it returned a verdict of guilty of murder in the first degree, without capital punishment. The defendant was sentenced to imprisonment for life (in accordance with Code (1957), Art. 27, Sec. 413), and he appeals from the conviction and sentence.

No issue is raised on this appeal with regard to the finding of sanity at the time of trial. The primary contention of the defendant-appellant here is that the trial court improperly excluded testimony of two lay witnesses relevant to the issue of insanity at the time of the offense. He also contends that the trial court erred in admitting, over objection, four photographs of the deceased taken at the scene of the shooting shortly after it occurred and before the body had been moved.

We shall take up the matter of the photographs first. The defendant claims that they were inflammatory in nature. The State urged that they were merely representations of the actual scene, and also offered them for the purpose of identifying the body as that upon which a doctor performed an autopsy. The doctor was later called as a witness and was shown only one of the four photographs for purposes of identification. The photographs were in black and white and there was nothing to show any distortion of focus or position. As the senior trial judge observed, it was "not a very pleasant scene" and "[s]ome of them [the photographs] may be distasteful, but I don't think this adds much one way or the other." We find no error in the admission of these photographs. The matter is one within the discretion of the trial court and there is nothing to show any abuse of discretion. *Cook v. State,* 225 Md. 603, 608, 171 A. 2d 460, 463.

The appellant's defense was insanity at the time of the commission of the offense. The evidence is ample to show that he went to his wife's place of employment, a delicatessen restaurant, at about 2 P.M. on the day of the shooting, that he asked her to sit down with him at a table in a booth, that he then used a .22 calibre pistol to shoot her five times, that he had purchased the pistol and shells on the day of the shooting, that

he had gotten a friend or acquaintance in a nearby tavern to load it for him for the stated purpose of shooting squirrels, that he had gone from the tavern to the restaurant just before the shooting, that he had returned to the tavern immediately afterwards, and that he was there arrested and turned the pistol over to the police without objection. There was also testimony that he stated to the police that his wife had been running around with other men, that he had decided the night before the shooting to kill her and that he might "get the chair" for what he had done, but that it was worth it.

The defendant was examined by two psychiatrists, Dr. Prado, the Director of Correctional Psychiatry of the Department of Mental Hygiene, and Dr. Fagan, a private psychiatrist of his own selection. Both agreed that he was a passive-aggressive type of personality. Dr. Prado considered him sane and Dr. Fagan considered him insane at the time of the offense, each of them applying the M'Naghten rule, which was adopted by this Court in *Spencer v. State,* 69 Md. 28, 13 A. 809, and has been consistently followed since that decision. *Watts v. State,* 223 Md. 268, 270-271, 164 A. 2d 334; *Lipscomb v. State,* 223 Md. 599, 602, 165 A. 2d 918.

The appellant himself testified that he remembered nothing from the time when he purchased the pistol and shells until the night of the shooting, when he was talking with the undertaker. Dr. Fagan's opinion was that the defendant had been insane at the time of the shooting, that as a result of his intense repression of hostile feelings towards his wife and damming back aggressive action, he had reached a breaking point during which there was a complete loss of memory for a rather short period of time. Dr. Fagan was of the opinion that at the time of the shooting the defendant had had a dissociative reaction and that he was then insane. We understand the doctor's testimony to indicate that the period of insanity was brief—a matter of not more than a few hours ending in the afternoon after the police had interrogated him and he had made a confession, which the police said he had signed, but which he denied having signed. We see no occasion to review in much further detail the expert opinion evidence of Dr. Fagan or to review fully the testimony of

Dr. Prado. Each thought that injuries sustained by the defendant during the Korean War, particularly an injury to the end of his spine, could have affected his mental condition. Dr. Prado thought that if they had done so, there would have been some clinical evidence of the fact, and since he found no such clinical evidence he was of the opinion that there had been no such effect. Dr. Fagan seems to have regarded such an effect of these injuries as a stronger possibility, but did not submit any finding or express any definite opinion that they had affected the defendant's mind.

The defense thus presented a claim of temporary insanity for a few hours on the day of the killing. The testimony of a practising physician was also introduced showing that the doctor had treated the defendant on each of the two days prior to the shooting. The defendant was nervous and complained of inability to sleep and the doctor gave him on the first day a week's supply of drugs or medicines to calm him down and on the second day a sleeping capsule or sedative.

The testimony of the two lay witnesses which was not admitted pertained to their respective contacts with and observations of the defendant, one in the afternoon, the other in the evening of the day preceding the shooting. We agree with the defendant's contention that the testimony of lay witnesses as to their observations of a defendant's conduct and condition is ordinarily admissible, and if sufficient, that their conclusions based thereon with regard to his sanity are also admissible. *Watts v. State,* 99 Md. 30, 57 A. 542, a murder case. Cf. *Price v. State,* 159 Md. 491, 495, 151 A. 409, also a murder case (testimony by lay witnesses as to facts from which an inference of insanity might be drawn). See also, among non-criminal cases involving mental capacity: *Townshend v. Townshend,* 7 Gill 10; *Doyle v. Rody,* 180 Md. 471, 25 A. 2d 457; *Sellers v. Qualls,* 206 Md. 58, 110 A. 2d 73; *Masius v. Wilson,* 213 Md. 259, 131 A. 2d 484; and *West v. Fidelity-Baltimore National Bank,* 219 Md. 258, 147 A. 2d 859. It must be remembered that the appellant and his psychiatrist claim only brief, temporary insanity on the day of the shooting.

The record discloses no proffer of the evidence which the

defendant sought to adduce from either of these witnesses. Such a proffer, we think, should have been made in order to preserve the questions fully and adequately for appellate review. See *Hughes v. Averza*, 223 Md. 12, 18, 161 A. 2d 671. Cf. *Simmons v. State*, 165 Md. 155, 175, 167 A. 60. A proffer may not, however, be necessary if the substance of the expected evidence is indicated by questions from which the desired answers are reasonably clear. Cf. Rule 5 of the Uniform Rules of Evidence promulgated by the National Conference of Commissioners on Uniform State Laws in 1953 (not, however, adopted in this State). In the instant case, it is by no means clear from the questions to which objections were sustained just what the substance of the desired testimony would have been.

In the case of one of these two lay witnesses, who was a filling station operator who had known the defendant for (probably) some months, the testimony sought would, we gather from the record, have related to the defendant's appearance on the day before the shooting and to his reaction to the action of some unidentified persons ("they") at a place some miles away from his residence and from the scene of the shooting in taking "his truck" away from him. The defendant does not appear to have owned the truck, but had worked as a truck driver for some employer. The witness testified that he did not do anything as a result of his conversation with the defendant.

The other lay witness testified that she had seen the defendant (who was her brother) the night before the shooting and that he was then sober. An objection was sustained to a question as to what had then been "his condition as far as his nervous state" was concerned.

Assuming that one or both of these witnesses would have testified that the defendant was angry or resentful over the truck or in a nervous state on the day preceding the shooting —and we find nothing to indicate that they would have gone further—, we think that no prejudicial error resulted from the exclusion of this testimony. Testimony that he was in a nervous condition on the two days before the shooting came in not only from the defendant himself, but also from an ex-

pert witness, the attending physician who had then seen and prescribed for him. The testimony of the lay witnesses would have been only cumulative to this. Furthermore, the fact of his nervousness or irritability does not appear to have been in dispute. On the contrary, the repression of emotion with its consequent seething effect was assumed in reaching the same diagnosis by each of the psychiatrists—Dr. Prado, who examined the defendant for the State, and Dr. Fagan, who was selected by the defendant and was appointed, because of the defendant's indigency, to serve at State expense. The difference between them was whether or not the defendant was legally responsible for his action when repression erupted into violence the next day.

If we resolve all doubts as to the need for a proffer in favor of the defendant, and if we assume that the lay witnesses would have testified to the defendant's irritability or nervousness, or both, on the day before the crime and take the view that such testimony should have been admitted, still, since we find no prejudicial error, the judgment should not be reversed for an erroneous ruling on the admissibility of evidence. This rule has been frequently recognized in criminal cases. *Avery v. State,* 121 Md. 229, 232, 88 A. 148 (rule stated but not applied) ; *Kiterakis v. State,* 144 Md. 81, 83, 124 A. 401; *Richardson v. State,* 175 Md. 216, 219, 200 A. 362; *Swift v. State,* 224 Md. 300, 306-307, 167 A. 2d 762 (each of the last three cases involving the erroneous admission of evidence) ; *Gouker v. State,* 224 Md. 524, 529-530, 168 A. 2d 521 (evidence erroneously excluded) ; see also, *Martini v. State,* 200 Md. 609, 614, 92 A. 2d 456. In *Gouker v. State, supra,* as here, the evidence claimed to have been wrongfully excluded came in otherwise. Cases in which the erroneous exclusion of evidence was held not prejudicial and hence not cause for reversal include: *Coblentz v. State,* 164 Md. 558, 166 A. 45; *Gambrill v. State,* 120 Md. 203, 87 A. 900; *Wolf v. State,* 143 Md. 489, 503, 122 A. 641. Under these authorities we think that the judgment should be affirmed.

*Judgment affirmed.*