# ARMSTEAD *v.* STATE

[No. 64, September Term, 1961.]

*Decided November 20, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Joseph Rosenthal* and *Harold Buchman*, with whom were

*Norman N. Yankellow* and *Lawrence B. Coshnear* on the brief, for the appellant.

*Joseph S. Kaufman, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *Dene L. Lusby, Assistant State's Attorney,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This appeal involves another attempt to have the Court of Appeals abandon the well-established rule relating to legal sanity laid down in *Spencer v. State,* 69 Md. 28, 13 A. 809, and to have us adopt, by judicial fiat, a broader formula or test in determining criminal responsibility in Maryland.

The appellant was found guilty of murder in the first degree by Judge Foster, sitting without a jury, in the Criminal Court of Baltimore, and sentenced to life imprisonment.

The evidence is uncontradicted that she, shortly after an altercation with one Zelma Gaskins in a neighborhood bar, stabbed and killed her. One of the witnesses testified that the appellant said to her sister, Barbara Scott: "Give me the blade [a knife]. I'm going to fix this bitch [the deceased]," and, about six or eight minutes thereafter as the victim started to walk out the door, the appellant "jumped on her" and fatally stabbed her in the left chest.

Although the appellant poses two questions in her brief, they are, in reality, the same, so they may properly be considered together. She, apparently, concedes that the evidence was sufficient to sustain a verdict of murder in the second degree, but contends that the trial judge should have granted her motion for a directed verdict that she was not guilty of murder in the first degree. She admits that the evidence does not show her to be insane, but argues it discloses that, due to the fact that she is an epileptic who, occasionally, had suffered seizures of the grand mal type, she "should be considered to have 'diminished responsibility,'" and, therefore, could not be guilty of wilful, deliberate and premeditated murder. The argument in her brief consists, for the main part, of several quotations from articles as to how epilepsy

affects some of the people afflicted therewith and two quotations from articles and text-writers on criminal law.

The quotations on epilepsy state that "as ordinarily described," the epileptic patient is a self-centered person, constantly demanding his own way and violently resenting interference. He is subject to outbursts of temper and is often moody and peevish. Obstinacy and contrariness *may* exist with a high degree of superficial docility; and mendacity and ethical perversions may be seen with piety and pleasing speech. The subject becomes unsocial, quarrelsome, and is inclined to lie and employ violence.[1] The appellant also offered the results of two electro-encephalographic tests made upon her in September, 1951, and July, 1952, which showed "abnormal findings." It will not be necessary to set forth the quotations from the articles on criminal law as they are answered by what we shall say below concerning the previous decisions of this Court.

We have stated the appellant concedes that the evidence failed to show that she was insane. This concessum is no more than an appraisal of the testimony. The only expert offered on the question of sanity was Dr. Guttmacher, Chief Medical Officer of the Supreme Bench of Baltimore City, who examined her in 1960 and came to the conclusion: "This patient has dull, normal intelligence. There is no evidence of psychosis. However, she is quite emotionally unstable and her system of social values is seriously defective. In the examiner's opinion, the patient is a fully responsible individual." In February, 1961, this same witness wrote to Judge Foster (the letter being introduced by the appellant) stating that in his opinion the "abnormal electro-encephalographic findings" in the defendant did not establish a lack of criminal responsibility; that she had too clear a memory of what transpired at the time of the offense for it to have occurred during an epileptic seizure.

The appellant attacks the test of sanity to create criminal responsibility laid down in *Spencer, supra* (even though she admits she is not insane), and suggests a modification there-

---

1. Clark, Epilepsy and the Convulsive State, p. 69. Bridge, 32 Archives of Neurology and Psychiatry, p. 723.

of; and then states that if she cannot obtain relief from "this concept," it is still only a short step to harmonize the theory of "diminished responsibility," [1a] with the prevailing common law that certain circumstances such as "heat of passion" can be used to mitigate an offense and reduce a homicide from second degree murder to manslaughter. With regard to this latter contention, she refers to the well-recognized principle of law that when a statute establishes different degrees of murder and requires deliberate premeditation in order to constitute murder in the first degree (as ours does), the question of whether the accused is in such condition of mind as to be incapable of deliberate premeditation necessarily becomes a material subject of consideration. *Hopt v. People,* 104 U. S. 631; *Chisley v. State,* 202 Md. 87, 95 A. 2d 577. It is manifest that if she is to obtain relief, under the facts of this case, upon either theory, the rule laid down in *Spencer* must be broadened or modified, for the first theory explicitly suggests the same, and under the second, if she lacked sufficient mental capacity to commit a crime (in this instance, wilful, deliberate and premeditated murder) as required by the standard set in *Spencer,* she would be entitled to a general verdict of not guilty by reason of insanity, but, on the other hand, if she did have sufficient mental capacity to create criminal responsibility as the test was set forth in *Spencer,* then she is a responsible agent and must answer for the crime she committed, unless, as stated above, the *Spencer* rule is broadened or modified.

Shortly after the decisions of *Durham v. United States,* 214 F. 2d 862 (U. S. C. A., D. C.), and *Stewart v. United States,*[2] 214 F. 2d 879 (U. S. C. A., D. C.), wherein a different and broader formula than the right-and-wrong test as stated in *Spencer* to create criminal responsibility was accepted, the case of *Thomas v. State,* 206 Md. 575, 112 A. 2d 913, was decided by the Court of Appeals. The Court was earnestly urged to overrule the right-and-wrong test. After reviewing the decisions in *Durham* and *Stewart, supra,* and the history and legal basis of the right-and-wrong test, the Court con-

1a. This doctrine is recognized and applied in some jurisdictions. State v. Padilla, 347 P. 2d 312 (N. M.).

2. See also United States v. Currens, 290 F. 2d 751 (C. A., 3rd.).

cluded that this test was still the law of Maryland (and we may add is still the majority view), and refused to broaden the test, a decision that has been consistently followed ever since its rendition. See *Bryant v. State,* 207 Md. 565, 115 A. 2d 502; *Cole v. State,* 212 Md. 55, 128 A. 2d 437; *Daniels v. State,* 213 Md. 90, 131 A. 2d 267; *Saldiveri v. State,* 217 Md. 412, 143 A. 2d 70; *Stansbury v. State,* 218 Md. 255, 146 A. 2d 17; *Watts v. State,* 223 Md. 268, 164 A. 2d 334; *Lipscomb v. State,* 223 Md. 599, 165 A. 2d 918. We hold that Judge Foster was correct in his application of the test of mental capacity which creates criminal responsibility in this State, as said test was laid down in the above cases; and, further, that the evidence adduced was sufficient to support a finding of all of the constituent elements of murder in the first degree.

*Judgment affirmed, with costs.*