**Clifford Earl HAZEL**

v.

**WARDEN, MARYLAND PENITENTIARY.**

Civ. No. 13781.

United States District Court
D. Maryland.

June 12, 1962.

Edward L. Genn, Silver Spring, Md., and Fred E. Weisgal, Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, William J. McCarthy and Robert F. Sweeney, Asst. Attys. Gen. of Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

Hazel, the petitioner in this habeas corpus proceeding, was tried on a charge of rape by the Criminal Court of Baltimore City, three judges sitting without a jury. He was found sane and guilty as charged and on August 14, 1959, was sentenced to death. The conviction was affirmed on appeal, Hazel v. State, 221

Md. 464, 157 A.2d 922. His petition under the Uniform Post Conviction Procedure Act (UPCPA), Md.Code, 1957 ed., Art. 27, sec. 645A–J, was dismissed by Judge Warnken after a full hearing and with an opinion, 226 Md. 260, 173 A.2d 189. Judge Warnken's order was affirmed on appeal, 226 Md. 254, 173 A.2d 187. Certiorari was denied by the Supreme Court, 368 U.S. 1004, 82 S.Ct. 638, 7 L.Ed. 2d 542. Most of the material facts are set out in those opinions and will not be repeated here, but they should be read as part of this opinion.

On May 7, 1962, a few days before the date set for his execution, Hazel filed a petition for a writ of habeas corpus in this court, alleging that his constitutional rights had been violated in that (1) he was denied the right to counsel while he was held and questioned from April 30, 1959 to May 5, 1959, (2) that he did not fully understand the trial procedure, and (3) that evidence obtained by an unlawful search and seizure was introduced at his trial. This court ordered a prompt hearing to determine whether a writ should be issued.

The same day, an attorney associated with the Civil Liberties Union entered the case and filed a supplementary petition raising the following points: (A) that the Maryland test of responsibility violates the Fifth, Eighth and Fourteenth Amendments; (B) that Hazel was insane at the time of the alleged offense and at the time of his trial and sentence; (C) that state authorities suppressed evidence and the state courts applied unconstitutional standards to the determination of "such facts"; (D) that Hazel was deprived of a fair and impartial trial; and (E) that Hazel was prevented from receiving or was deprived of the effective assistance of counsel.

Both sides agreed that a writ should be issued and that a hearing should be held on May 24, so a stay of execution was ordered. A hearing was held on May 24–25, at which testimony was taken, much of it subject to exception on objections by the state, and many exhibits were received.

Hazel offered no evidence to show any unreasonable search and seizure, nor any denial of the right of counsel between April 30 and May 5, 1959. For that reason, no relief can be granted on those grounds. Moreover, those points were waived by not having been raised on the original appeal. Whitley v. Steiner, 4 Cir., 293 F.2d 895. See also Hall v. Warden, D.Md., 201 F.Supp. 639. The other grounds alleged are embraced in the following points, which are being pressed: (I) That the Maryland test of responsibility is unconstitutional. (II) That Hazel was denied his constitutional rights because the opinion of Dr. Morganstern with respect to his sanity at the time of the alleged offense and at the time of the trial was either (a) suppressed or misrepresented by the state and its witnesses, or (b) not discovered before the end of the trial because of ineffective assistance of counsel, so gross as to amount to a deprivation of a fair trial; and (c) that the Court of Appeals of Maryland applied erroneous constitutional standards in its opinion in the UPCPA proceeding.

(I) The issue of responsibility was considered by the three judges at the trial, and was decided according to the test laid down in Spencer v. State, 69 Md. 28, 37, 13 A. 809, and followed by the Maryland courts ever since. Thomas v. State, 206 Md. 575, 112 A.2d 913; Armstead v. State, 227 Md. 73, 76, 175 A.2d 24. That test is essentially the same as the M'Naghten Rule. 10 Cl. & F. 200, 8 Eng.Rep. 718.

Counsel for Hazel now argue that the use of that test by a state court violates the rights of a defendant under the Fourteenth Amendment. He concedes that there is no authority to support his argument, but urges that developments in medical science have rendered the Spencer test obsolete, and that since "irresistible impulse" is not made a ground for exculpation, the test fails to meet minimum federal standards imposed by Davis v. United States, 165 U.S. 373, 17 S.Ct. 360, 41 L.Ed. 750. That case, of course, was a federal prosecution; the issue before

**144**

the Supreme Court was different from the issue in the case at bar. The writer of the present opinion is on record that it would be wise for the federal courts and for the State of Maryland to adopt a rule similar to that set out in sec. 4.01 of the Model Penal Code recently adopted by the American Law Institute, coupled with a statute requiring some further confinement for those found not guilty because of insanity.[1] But those are matters of policy, not of constitutional right.

▪ Moreover, the point was not raised at Hazel's trial, nor on appeal therefrom, nor in the UPCPA proceeding. It has been waived. Whitley v. Steiner, 4 Cir., 293 F.2d 895, and cases cited therein.

(II) At the UPCPA hearing before Judge Warnken, counsel for Hazel argued:

"(1) That the jurisdiction of the court to proceed with the trial was dependent upon findings and a report of the Department of Mental Hygiene, pursuant to Article 59, section 11 of the Code, as to the sanity of the petitioner, that such report was not furnished and if it had been the petitioner would not have been subjected to trial. (2) That the testimony of Dr. Ward, Superintendent of Crownsville State Hospital, 'was incorrect and false' and if the actual facts had been produced in court, the petitioner would not have been subjected to trial. (3) That the court was misled by state officials, Drs. Ward and Ramirez, 'who knowingly allowed the court to exclude from its consideration information peculiarly within their (the officials) knowledge, which would have resulted in the defendant petitioner not coming to trial on August 7, 1959, or resulted in a finding of insanity had he come to trial." 226 Md. at 261, 173 A.2d at 190.

On point (1) Judge Warnken decided against Hazel, his decision was affirmed on appeal, and that point is not pressed here.

On points (2) and (3) Judge Warnken found, after full and careful consideration, that the testimony was not "incorrect and false" and that there was no evidence even to suggest that the court had been misled.

The Court of Appeals affirmed, adopting the opinion of Judge Warnken, with the following amplification:

"If it be assumed that Dr. Ward's sincere statement there was no disagreement among the staff as to Hazel's sanity, was incorrect and had the same effect as a material misstatement knowingly made, or left uncorrected, nevertheless, because the assumed mistake was not prejudicial, there resulted neither a denial of due process nor any other ground for relief under *coram nobis* (one of the remedies for which the Post Conviction statute, Code (1960 Cum.Supp.), Art. 27, Sec. 645A, is a substitute) as there might otherwise have been. (cases omitted)

"Dr. Morganstern in his memorandum to his superior on August 14, 1959, complaining that he was not consulted nor told of the change in diagnosis, said he was still of the opinion Hazel 'at the time of the conference was mentally ill * * *.' He has not examined Hazel, reviewed the Crownsville files nor consulted anyone about Hazel since July 15, 1959. He has never said to anyone, or ever testified, that he thinks the ultimate diagnosis of sanity was wrong. Dr. Morganstern's complaint was that he had not been consulted further before Hazel was sent to court for trial, not that an insane man had been tried, convicted and sentenced to death. We cannot and do not believe Dr. Morganstern

1. See United States v. Hopkins, D.Md., 169 F.Supp. 187, 190; Insanity as a Defense to Crime, XIX Md.Law Rev. 271; Proceedings of Maryland State Bar Association, Jan. 1962. See also Sauer v. United States, 9 Cir., 241 F.2d 640.

would have remained silent, save for a complaint as to departmental procedure or protocol, and never, to this day, have said Doctors Ward, Ramirez, Phillips and Guttmacher had reached a wrong result, if he believed an insane man was about to be executed." 226 Md. 254, at 258–259, 173 A.2d 187, at 189.

■ (a) Hazel's argument that the state suppressed or misrepresented any facts or opinions with respect to his sanity is entirely without merit. The facts on this point are fully set out in Judge Warnken's opinion. The letter of Dr. Morganstern dated August 14, 1959, upon which Hazel relies, was written after the trial, and can form no basis for a charge of suppression at the trial. Between the trial and the UPCPA proceeding the Deputy Attorney General interviewed Dr. Morganstern, Dr. Ward, Dr. Ramirez and Dr. Guttmacher, and supplied copies of their statements to defense counsel before the UPCPA proceeding. There is no basis for a charge of suppression or misrepresentation by any state official. The testimony of Dr. Morganstern in the UPCPA proceedings fully justified the passage quoted above from the opinion of the Court of Appeals.

(b) Hazel's charge that his counsel were incompetent is based upon the following passage in the opinion of Judge Warnken:

"The present contentions seem to be rather belated efforts to review and revive matters which were known or easily discoverable by ordinary diligence before or at the criminal trial. The newly discovered evidence principle is therefore not applicable. By the time Dr. Ward's (who was the third medical expert) testimony as to sanity was almost concluded, it should have been evident to counsel that petitioner had a lost cause on the issue of insanity unless a way could be found to neutralize or dilute the positive statements of the doctors which were unaffected by forceful and intelligent

cross examination. Resourcefulness would suggest ascertaining the reason for the difference in conclusions between July 17th and August 5th with respect to all of those who participated in the staff meeting. There was a lead in the testimony of Dr. Ward about a 'degree of disagreement' which was not seized upon and thoroughly developed and explored." 226 Md. at 271, 173 A.2d at 195.

If this finding or conclusion of Judge Warnken were accepted by this court, it would raise the question whether the failure of counsel (a) to exercise "ordinary diligence" or (b) to possess that degree of "resourcefulness" necessary to follow the "lead" in the testimony of Dr. Ward, was such a denial of the assistance of counsel as would amount to a deprivation of due process under the rules laid down in Snead v. Smyth, 4 Cir., 273 F.2d 838, and Turner v. Warden, 4 Cir., 303 F.2d 507. If the answer to that question should be in the affirmative, this court would be required to hold that the present judgment and commitment cannot be allowed to stand.

■ However, after reviewing the evidence and hearing the testimony of the lawyers who represented Hazel at his trial, this court finds that they did *not* (a) fail to exercise ordinary diligence nor (b) lack that degree of resourcefulness possessed by the ordinarily competent attorney who argues cases in the civil and criminal courts of Baltimore City, particularly in view of the speed with which the case was brought to trial after the July 15 conference. See the letters of July 17, July 21, July 24 and August 5, and the report of Dr. Guttmacher dated August 3, referred to in Judge Warnken's opinion.

After almost every trial it is possible to see, with the advantage of hindsight, something which the lawyers on each side might have said or done, or left unsaid or undone, which might have helped their cause. That is not the test either of ordinary diligence and resourcefulness or of denial of due process.

This finding or conclusion requires a reexamination of the question whether there is any evidence "newly discovered" after the trial so material that it would require a new trial. Ordinarily, a federal court need only examine the constitutional standards applied by the state courts in deciding such a question. The present case is exceptional, however, not only because of the conflict between the findings of this court and the findings of the state court on the question whether there was a lack of ordinary diligence or resourcefulness on the part of counsel, but also because there is evidence in the record before this court which was not presented to or not considered by the state courts in the UPCPA proceeding, dealing with the capacity of the defendant to stand trial, as well as with his responsibility at the time of the offense. That evidence comprises:

(1) The testimony of Dr. Goldberg, a chiropractor, with respect to certain bizarre statements made to him by Hazel on several occasions a year or so before the crime. Dr. Ward testified in this court that if he had known about those statements he would "certainly have wanted to talk to Dr. Goldberg about this man * * * concerning this particular instance. I would have wanted to evaluate that."

The statements made to Dr. Goldberg were not known to defense counsel at the time of the trial and could not have been discovered by the exercise of ordinary diligence. A memorandum of Dr. Goldberg's statement was buried in the voluminous record of the UPCPA proceeding, but it was not mentioned in the briefs or opinions therein.

(2) The memorandum of a conference between Dr. Morganstern and the Deputy Attorney General (after the first trial and before the UPCPA proceedings), in which Dr. Morganstern said, inter alia: "As to his legal responsibility at the time of the offense * * * it was my feeling that the patient, and the picture he presented at the conference, he could not have been legally responsible at the time of the alleged offense;" and that he did not "think in three weeks a marked change could have occurred" to enable Hazel to be ready for trial. A copy of the memorandum was given to Hazel's counsel by the Attorney General's office before the UPCPA proceeding, but for some reason neither side brought it to the attention of the court. As we have seen, Dr. Morganstern's testimony in the UPCPA proceedings fully justified the passages quoted above from the opinion of the Court of Appeals.

However, the statement which Dr. Morganstern made to the Deputy Attorney General, and his testimony in this court to the same general effect,[2] removes one of the premises upon which the Court of Appeals reached its conclusion that the alleged misstatement was not prejudicial and that there resulted neither a denial of due process nor any other ground for relief under coram nobis, as there might otherwise have been. 226 Md. at 259, 173 A.2d at 189.

The Court of Appeals dealt with the problem as one of an assumed misstatement. But the memoranda of Dr. Goldberg and Dr. Morganstern and the testimony of Dr. Ward in this case raise a similar question of prejudice, as well as other possible legal questions.

Whether or not this court has authority to decide such questions initially, it is quite clear that in the interest of comity it is desirable that such questions should be presented to and decided by the state courts, so that any review by a federal court may be minimized and limited to constitutional questions, with the benefit of fully considered opinions by the state courts.

Even if this court agreed with Judge Warnken's finding that there had been a lack of ordinary diligence or resourcefulness on the part of counsel, this court would still consider it necessary that there be a reconsideration of the question of prejudice in the light (1) of the statement given to the Deputy Attorney Gen-

---

2. This court does not intimate an opinion as to the weight to be given any of the evidence.

eral by Dr. Morganstern and (2) of the testimony of Dr. Goldberg, Dr. Ward and Dr. Morganstern in this court; and this court would consider it desirable that such reconsideration be given by the state courts rather than by this federal court.

(c) Hazel's argument that the Court of Appeals applied erroneous constitutional standards is based upon two points: (1) He claims the Court erred in holding: "If it be assumed that Dr. Ward's sincere statement there was no disagreement among the staff as to Hazel's sanity, was incorrect and had the same effect as a material misstatement knowingly made, or left uncorrected, nevertheless, because the assumed mistake was not prejudicial, there resulted neither a denial of due process nor any other ground for relief under coram nobis * * *." He argues that by definition a material misstatement must be prejudicial. (2) His second point is the Court erred in holding that, even assuming the trial court had known that Dr. Morganstern's opinions were in fact different from those of Dr. Ward, there is nothing to indicate that the result would have been different.

Since this court agrees with the finding and conclusion of the state courts that there was no suppression or misrepresentation by Dr. Ward or any other state official, it is unnecessary to consider these points in that connection. Without intimating any opinion on the merit of Hazel's contentions, this court notes that they have not been presented to the state courts in connection with the "newly discovered evidence".

This court will therefore remand petitioner to the custody of respondent, but will continue the stay of execution until the further order of this court, so that petitioner may (1) promptly, i. e. within 15 days from the date of the order of remand, take action in a state court seeking a new trial or other relief, and (2) if such efforts fail and if he and his counsel choose to do so, promptly file in this court a petition seeking relief on any constitutional grounds which may properly be raised at that time.