PATRICK W. BERGIN *v.* STATE OF MARYLAND

[No. 8, Initial Term, 1967.]

*Decided March 14, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH and THOMPSON, JJ., and DYER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Rolf A. Quisgard, Jr.,* for appellant.

*Francis B. Burch, Attorney General,* and *David T. Mason, Assistant Attorney General,* with whom were *Thomas B. Finan, former Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The Appellant was convicted in the Criminal Court of Baltimore on December 14, 1966, of attempted armed robbery, possession of barbiturates and carrying a concealed weapon. He was sentenced to twenty years for the armed robbery, one year for the concealed weapon and fined $100 on the barbiturate conviction, all sentences to run consecutively. Written pleas of

not guilty by reason of insanity and not guilty generally had been entered by the Appellant. He was found, by a jury, to be sane at the time of the crimes and sane at the time of his trial.

Two questions are presented in this appeal:

"1. Did the Court err in refusing Defendant's Motion for a directed verdict of not guilty by reason of insanity?

2. Should the Spencer-McNaughten Rule continue as the legal test of sanity in Maryland Criminal Law?"

It appears that the Appellant, prior to this proceeding, had been charged in the Circuit Court for Baltimore County on September 4, 1964, with larceny and unauthorized use of a motor vehicle. The Court, sitting without a jury, found him not guilty by reason of insanity, both at the time of the alleged crimes and at the time of trial. On the same day he was committed to Spring Grove State Hospital.

On Friday, May 26, 1965, the Appellant was told by the Spring Grove authorities that he was being released and could not stay there any longer unless he voluntarily recommitted himself, which he promptly did. On the same day he obtained a weekend pass and spent the afternoon unsuccessfully seeking employment. He returned to Spring Grove that evening, attended a patient's dance and spent the night there.

The next afternoon he went into Baltimore City, sought without success to see his estranged wife and four children, and then looked up a friend and former patient of Spring Grove. The friend gave the Appellant several barbiturate pills, one of which he took. The friend then dropped the Appellant off at a bar where the Appellant "had a couple of beers". Several hours later, after allegedly attending a wedding, the friend rejoined the Appellant at the bar and there unfolded to the Appellant a plan he had devised to rob a drug store in order to obtain drugs and narcotics. The Appellant agreed to carry out the plan. The friend thereupon gave him a 22 caliber starter pistol which fired blank ammunition and drove him to the rear of the drug store where the plan was again reviewed in detail.

Pursuant to the plan, the Appellant entered the rear door

of the drug store, fired the gun once to impress an employee he encountered that it was a hold-up and not a joke, handed a brown paper bag to the pharmacist on duty and demanded all the "hard stuff", which the pharmacist understood to mean narcotics. The pharmacist went to the safe where the narcotics were kept and in doing so noticed that the bag was wet from a rain shower that had just occurred. He decided to overload the bag hoping it would break, which it did, and the narcotics then spilled all over the floor. While the Appellant went to the front of the store to get another bag, the pharmacist armed himself with a steel bar, thirty-six inches long, used to bar the cellar door. When the Appellant came back through the door to the prescription department, the pharmacist hit him in the midriff with the steel bar. The gun went off as he was knocked down. The pharmacist, with the aid of another employee, was able to disarm the Appellant and keep him subdued until the police arrived. They took the Appellant into custody and found in his pocket five capsules containing barbiturates.

## I.

The Appellant now contends that there was insufficient evidence of his sanity to permit the issue to be weighed by the jury and therefore the lower Court erred in refusing his Motion for a directed verdict of not guilty by reason of insanity. In support of this contention it is argued that the Appellant was adjudged insane at his trial in Baltimore County on September 4, 1964, and that his confinement in Spring Grove was to continue "until he shall have recovered his reason and be discharged by due course of law, pursuant to the provisions of Article 59, Section (a) and (b)". It is contended that the Appellant has never been adjudicated to be sane in accordance with the provisions of Article 59 and, accordingly, there arises a "violent presumption" in favor of the Appellant's continued insanity.

It is true that the record does not indicate that the Appellant has ever had an adjudication of sanity under the provisions of Article 59, Section 8 (a) which provides that any Judge may, upon habeas corpus proceedings, order the permanent or temporary discharge of a person upon satisfactory proof of perma-

nent or temporary recovery. However, Section 8 (b) provides that:

> "A person who has been found not guilty of any crime or offense by reason of insanity * * * may be committed to one of the appropriate mental hospitals of the State for examination and evaluation to determine whether or not, by reason of mental disease or defect, the person is a danger to himself or to his own safety, or will be a menace to the safety of the person or property of others. *He shall be released forthwith upon a negative finding by such hospital* * * *." (Italics supplied)

It is apparent from the record that the authorities at Spring Grove had determined that the Appellant was sane prior to May 26, 1965, and that they were required under the provisions of Article 59, Section 8 (b) to release him "forthwith" unless he voluntarily recommitted himself which, of course, he did. Under these circumstances, we fail to see how any so-called "violent presumption" in favor of the Appellant's continuing insanity existed at the time of his trial.

It is the law in this State that:

> "A man is presumed sane until sufficient proof of his insanity is introduced to raise a question in the minds of reasonable men as to whether he is or is not sane." *Lipscomb v. State,* 223 Md. 599, 604 (1960).

The proof necessary to overcome the presumption of sanity must be evidence of insanity as defined under the McNaughten-Spencer Rule. *Saldiveri v. State,* 217 Md. 412, 422 (1958) ; *Rowe v. State,* 234 Md. 295 (1964). When sufficient proof of insanity has been introduced to overcome the presumption of sanity, the State has the burden of proving sanity beyond a reasonable doubt. *Bradford v. State,* 234 Md. 505 (1964). In *Fowler v. State,* 237 Md. 508 (1965) the Court of Appeals of Maryland stated (at page 511) :

> "The trial court should decide, as a preliminary matter of law, whether there has been sufficient proof of insanity introduced which, if believed, would raise a

question in the minds of reasonable men whether the defendant was or was not sane under the M'Naghten-Spencer test. If the trial court decides this preliminary question of law in the affirmative, then the jury should be instructed that the burden is upon the State to prove the defendant sane beyond a reasonable doubt. If the trial judge decides this preliminary question in the negative, the issue of insanity should be withdrawn from consideration by the jury, still, of course, leaving to the jury the question whether the State has proved the commission of the alleged crime beyond a reasonable doubt."

The lower Court conducted a preliminary inquiry into the Appellant's sanity and concluded (out of the presence of the jury) that "the Defendant is sane now and capable of assisting counsel in the trial of the case". The Court, nevertheless, submitted the issues of sanity to the jury and instructed them that the State had the burden of proving beyond a reasonable doubt the sanity of the Appellant at the time of the crimes and at the time of the trial. This certainly did not constitute prejudicial error. Cf. *Fowler* and *Bradford,* supra.

The only evidence offered by the Appellant in this case regarding his insanity was the prior judgment of the Circuit Court for Baltimore County in September, 1964, that the Appellant was insane at the time of the alleged crimes there involved and insane at the time of the trial. Although the Court had before it a report of the Clifton T. Perkins Hospital finding the Appellant competent it apparently based its findings upon an independent report of a Dr. Prado who found the Appellant to be insane at the time of the crimes, although he found him competent to stand trial.

On the other hand, the record indicates that there was ample evidence presented on behalf of the State from which the jury could find the Appellant to be sane, beyond a reasonable doubt, at the time the crimes were committed and at the time of his trial. After the Appellant was charged with the crimes here involved, he was sent to The Clifton T. Perkins State Hospital where he remained from June 23, 1965 to September 25, 1965.

It was the unanimous opinion of the medical staff that the Appellant was "currently competent to stand trial", and that at the time of the offense he was "able to properly distinguish between right and wrong, and to know the nature and consequences of his act as applied to him". Certainly, this was sufficient evidence to overcome any presumption of the Appellant's continuing insanity, if any such presumption were justified, and it fits squarely within the definition of sanity as laid down in the McNaughten-Spencer test. *Spencer v. State,* 69 Md. 28 (1888). Accordingly, we see no error in the lower Court's refusal to grant the Appellant's Motion for a directed verdict of not guilty by reason of insanity.

## II.

Counsel for the Appellant vigorously argues that because of the advances of modern scientific knowledge, this Court should give consideration to rejecting the McNaughten-Spencer Rule in favor of adopting the Durham Rule. *Durham v. United States,* 214 F. 2d 862. See also *Stewart v. United States,* 214 F. 2d 879 and *United States v. Currens,* 290 F. 2d 751. This argument has been urged upon the Court of Appeals of Maryland on a number of prior occasions and in each instance rejected. The most recent occasion appears to have been in *Armstead v. State,* 227 Md. 73 (1961). ·

This Court recognizes that there have been substantial advances in scientific knowledge since the adoption in this State of the McNaughten Rule nearly a century ago. We also recognize that since the rule was adopted there have likewise been substantial advances in the scientific treatment of criminals. Maryland, in enacting the Defective Delinquent Law, Code, Article 31 B (Cum. Supp. 1966), has been in the forefront of the States in recognizing these advances.

However, we also recognize that there is a sound legal basis for the McNaughten-Spencer Rule. This legal basis was analysed with meticulous care in *Armstead v. State,* supra, and prior thereto in *Cole v. State,* 212 Md. 55 (1956); *Bryant v. State,* 207 Md. 565 (1955) and *Thomas v. State,* 206 Md. 575 (1955). As was pointed out by Judge Henderson in *Cole,* supra, any modification of the rule "is a prerogative of the Legisla-

ture and not of the Courts". We agree and, accordingly, must reject the plea to abandon the McNaughten-Spencer Rule.

*Judgment affirmed with costs.*