## HARRY W. LEAGUE, JR. *v.* STATE OF MARYLAND

[No. 195, Initial Term, 1967.]

*Decided August 29, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and TRAVERS, J., Associate Judge of the First Judicial Circuit, specially assigned.

*Roland Walker*, with whom was *Edwin Shapiro* on the brief, for appellant.

*Alan M. Wilner, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City*, and *John D. Hackett, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The Appellant, Harry W. League, Jr., after entering pleas of "not guilty" and "not guilty by reason of insanity * * * at the time of the alleged offenses," was convicted in a non-jury trial in the Criminal Court of Baltimore on three counts of passing a worthless check, three counts of larceny after trust and one count of embezzlement. He was sentenced to three years imprisonment on his conviction for embezzlement and four years each on the other convictions, the sentences to run concurrently.

At the time of the alleged crimes, the record indicates that League was a member of the Maryland Bar and had been retained by Ambrose Caltagrione to represent him in a dispute with a creditor. League advised Caltagrione that the creditor would accept $1050.00 in settlement of the claim, whereupon Caltagrione borrowed the money from a finance company and sent the check received from the finance company to League. Instead of applying the proceeds towards settlement of the claim League appropriated the funds to his own use. For this, he was convicted under Indictment No. 1398 (larceny after trust).

League was also retained by Caltagrione to prosecute a Workmen's Compensation claim. He brought another attorney into the case and, as a result of his efforts, a check in the amount of $500.00 was received and delivered by the attorney to League for transmittal to Caltagrione. The check was never delivered to Caltagrione. For this, League was convicted under Indictment No. 1396 (embezzlement).

Harry M. Ruth testified that he was in the printing business and had performed printing work for League over a period of time. He was given a check in the amount of $100.00 by League in partial payment of an open account, which check was returned for insufficient funds. For this League was convicted under Indictment No. 1391 (passing worthless check).

Ruth also testified that he and two other individuals had formed a partnership with League to purchase a nursing home. Ruth gave League a check for $3500.00 as his capital contribution which League turned over to an accountant to be held in escrow. When the purchase transaction failed to materialize, the money was returned to League who used it for his own purposes. League gave Ruth a check for $3500.00 which was returned for insufficient funds, although Ruth finally recovered $2500.00 of his funds. For this, League was convicted under Indictments No. 1397 (larceny after trust) and 1393 (passing worthless check).

Norman Backhaus testified that he had retained League to represent him in connection with a $20,000.00 default judgment which had previously been entered against him. He gave League a $500.00 retainer and $1500.00 to obtain "a stay in this case." League told him that "you will get this $1500.00 back * * *." Several weeks later Backhaus demanded the return of the $1500.00 and was given a check by League for $1500.00 which was deposited and returned with the notation "account closed, no funds." League admitted using the $1500.00 for his personal expenses. For this, he was convicted under Indictments No. 1392 (passing worthless check) and 1395 (larceny after trust).

In this appeal, it is contended that the application of the M'Naghten-Spencer Rule—enunciated in *Spencer v. State,* 69 Md. 28 (1888), and subsequent cases—as a standard for determining the Appellant's criminal responsibility amounts to a denial of due process of law under the Fourteenth Amendment to the United States Constitution.

This contention is not new. It was vigorously espoused in *Bergin v. State,* 1 Md. App. 74, the very first case to be argued before this Court after its creation. Prior thereto, it had been advanced in the Court of Appeals of Maryland in a number of cases. *Armstead v. State,* 227 Md. 73; *Cole v. State,* 212 Md.

55; *Bryant v. State,* 207 Md. 565; *Thomas v. State,* 206 Md. 575. It has been passed upon by the Supreme Court of the United States in *Leland v. Oregon,* 343 U. S. 790. In every instance this contention was rejected.

In *Bergin, supra,* the basis of the Rule and the cases in which it had been attacked were briefly reviewed. We concluded that "any modification of the Rule 'is a prerogative of the Legislature and not the Courts' ", and rejected, as we do here, the plea to modify or abandon it.

Subsequent to the Appellant's convictions, the General Assembly of Maryland enacted legislation which, in effect, substituted the American Law Institute test of criminal insanity for the M'Naghten-Spencer Rule. Code, Art. 59, Secs. 7-12. This newly created concept of criminal responsibility is not available to the Appellant since the statute did not become effective until June 1, 1967. We find no evidence that the General Assembly intended to give the legislation retroactive effect. Moreover, we do not find that the administration of justice requires that the concept be given retroactivity to cases pending on direct appeal where the trial thereof took place prior to June 1, 1967. *Johnson v. New Jersey,* 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772; *Westfall v. State,* 243 Md. 413, 420.

A study of the record indicates that the trial judge properly found the Appellant to be sane under the M'Naghten-Spencer Rule. The only testimony on the issue was given by the Appellant's own psychiatrist. He was asked: "Under the Spencer Rule * * * would Mr. League, at the time of the commission of the alleged crimes, know the nature and consequences of the acts that he did?" He answered: "Yes."

He further testified that he was familiar with the American Law Institute test and stated that:

> "I don't know whether I would have to say yes or not, *but I would have to not call him sick under this rule, either.* I don't think this rule really is—*this rule would apply to neurotic and psychotic disorders, not to the kind of psychopathic disorder Mr. League has.*
>
> I couldn't say yes or no in terms of this rule."
> (Emphasis supplied)

Since the Appellant was presumed to be sane and produced no evidence to rebut the presumption (see discussion in *Bergin, supra*), it is apparent that even under the American Law Institute test that evidence would have compelled a finding that Appellant was sane and responsible for his acts.

The Appellant contends that his conviction of embezzlement was in error since there was no showing that any part of the proceeds of the check received in payment of the Workmen's Compensation claim was appropriated to his own use, and, accordingly, there was no proof of the requisite fraudulent intent on his part.

It is true that League testified that he did not recall receiving the check but there is the testimony of the attorney who represented Caltagrione that he received a check from the insurance company payable to Caltagrione in the amount of $500.00 which he personally delivered to League for transmittal to Caltagrione; and the testimony of Caltagrione that he never received the check, or its equivalent in money, from League and that the endorsement of his name on the back of the check was not his signature. Thus, there is ample evidence from which the court below could conclude that the Appellant's failure to remit the check, or the funds represented thereby, to Caltagrione amounted to "the fraudulent and felonious appropriation of another's property by * * * [a person] to whom it has been entrusted or into whose hands it has lawfully come." 9 M.L.E. *Embezzlement*, Sec. 1, p. 157. It, therefore, constituted the crime of embezzlement as that term is used in Code, Art. 27, Sec. 129. See *Pedderson v. State*, 223 Md. 329, 335; *Nolan v. State*, 213 Md. 298; *Dick v. State*, 107 Md. 11; Clark and Marshall, Law of Crimes, Sec.12. 20 (6th Ed.).

The Appellant further contends that the three convictions of larceny after trust cannot stand because the statute, Code, Art. 27, Sec. 353, does not expressly prohibit a larceny after trust of money, *per se,* but limits the subject matter of larceny after trust to "goods and things of value." He argues that since the crime did not exist at common law, but was a creature of statute, any ambiguity or uncertainty should be resolved in favor of the accused and against the State.

Neither the Appellant nor the State has cited a Maryland

case involving this contention and we have found none. The Appellant cites several cases from other states but they are neither apposite nor helpful. None involves the construction of a larceny after trust statute nor do they specifically construe the words "goods or things of value." The State refers to one case—*Pawson v. Miller,* 72 N. Y. S. 1011 (1901), wherein a New York Court held that, for purposes of an action of trover for wrongful conversion, a check is a thing of value.

In determining the meaning and scope of a legislative enactment, the Court considers the language thereof in its natural and ordinary connotation. If there be no obscurity or ambiguity on the face of it, there is no necessity for construction, and the language will be accorded its apparent meaning. *Pressman v. Barnes,* 209 Md. 544. Where, however, the words of a statute are of doubtful meaning, the Court, in determining legislative intent, will consider not only the usual and literal meaning of such words, but will also consider their meaning and effect in the light of the setting, the objectives and the purposes of the enactment. *Height v. State,* 225 Md. 251; *Blake v. State,* 210 Md. 459; *Glickfield v. State,* 203 Md. 400.

Within these principles and without laboring the point further, we are of the opinion that the bank checks and the money entrusted to the Appellant were "things of value," within the meaning of the larceny after trust statute and that this conclusion comports with the intention of the Legislature in enacting the statute.[1]

The Appellant finally contends that each of the convictions for passing a worthless check was based upon an alleged violation of Code, Art. 27, Sec. 142; that the individuals to whom the worthless checks were given did not part with anything of value in reliance upon the Appellant's representation that the checks would be honored and, accordingly, the Appellant's ac-

---

1. Although the question here involved was not raised, this Court, in *Van v. State,* 1 Md. App. 347, affirmed a conviction of larceny after trust, where the accused, a used car salesman, had been given a check by the purchaser of an automobile and he applied the proceeds to his own use instead of paying off a loan on the car traded in as he had agreed to do.

tion was not within the conduct proscribed by the statute. We agree.

The statute, in substance, makes it unlawful for any person, with intent to defraud, to obtain anything of value from another by means of a worthless check. The gravamen of the offense is the parting with something of value in reliance upon the representation that the check will be honored upon presentation to the bank. As was stated in *Kaufman v. State,* 199 Md. 35, in discussing the statute:

> "It is also essential to a conviction of this offense that the person who received the worthless check must have relied upon the defendant's representations, and thereby was fraudulently induced to part with his money or property."

We are of the opinion, and the State agrees, that the individuals who received the worthless checks were not induced to part with their money or property in reliance upon the Appellant's representations that the checks would be honored upon presentation to the bank. Accordingly, the convictions under Indictments No. 1391, 1392, and 1393, were in error.

*Judgments affirmed as to the convictions under Indictments No. 1395, 1396, 1397 and 1398;*

*Judgments reversed as to the convictions under Indictments No. 1391, 1392 and 1393.*