# RONALD LEE DUBS *v.* STATE OF MARYLAND

[No. 301, Initial Term, 1967.]

526

*Decided December 6, 1967.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joseph F. Lentz, Jr.,* for appellant.

*S. Leonard Rottman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, J. Thomas Clark, State's Attorney for Queen Anne's County, Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* and *Donald Smith, Deputy State's Attorney for Harford County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On August 30, 1965 the appellant was convicted of murder in the first degree, without capital punishment, by a jury in the Circuit Court for Harford County. He was sentenced to imprisonment "for the rest of his natural life" on September 21, 1965. He noted an appeal on September 30, 1965. Upon petition of the appellant on October 22, 1965 the time for transmitting the record to the Court of Appeals was extended to December 28, 1965 and upon petition on January 19, 1966 was further extended to March 1, 1966. By order of the Court

of Appeals of February 14, 1966 the appeal was remanded to the lower court for further proceedings to ascertain whether the appellant desired to avail himself of the relief afforded by the rulings of the Court in *Schowgurow v. State,* 240 Md. 121, and its companion cases. At a hearing on March 9, 1966 the appellant offered a motion for a new trial and the motion was granted. When first charged with the crime, the appellant waived his right to indictment by a grand jury and requested an immediate trial under Code, Art. 27, § 592. An information was filed against him and he was tried thereunder. Therefore, it was not necessary to indict him when he elected to declare his trial invalid and his subsequent trial could proceed under the original information. On May 18, 1966 the appellant filed a motion for a change of venue and by order of court the case was removed to Queen Anne's County. On the same date the appellant moved to dismiss the information on the ground, among others, that he was denied a speedy trial. On June 17, 1966 the transcript of the record and a certified copy of the docket entries were filed in the Circuit Court for Queen Anne's County. On July 1, 1966 the appellant filed a pauper's oath and counsel was appointed to ·represent him. The motion to dismiss the information was heard and denied and the appellant pleaded "Not Guilty. Not Guilty by reason of insanity. Not Guilty by reason of insanity at the time of the crime and Not Guilty for being a chronic alcoholic." The case was assigned for trial on August 15, 1966 and trial before a jury commenced on that date. It concluded on August 19, 1966 and the jury returned its verdict: "Sane at the time of the trial. Sane at the commission of the alleged offense. Not Guilty of murder in the first degree but guilty of murder in the second degree." On September 16, 1966 the appellant was sentenced to imprisonment for a term of 18 years from January 28, 1965 after motion for a new trial was heard and denied.

I

On October 11, 1965 the Court of Appeals decided *Schowgurow v. State, supra,* and in reliance on that decision the appellant petitioned for a writ of habeas corpus in the Circuit Court for Harford County. On November 9, 1965 Judge Harry

E. Dyer, Jr. rendered an opinion in which he stated that the court was "inclined to agree" with the contention that the appellant's fundamental constitutional rights had been "infringed under the reasoning of the *Schowgurow* decision" and that the court would order "the issuance of a Writ of Habeas Corpus and the release of the appellant from imprisonment unless the State's Attorney for Harford County can re-indict the Relator by a properly constituted Grand Jury, within a reasonable time." The appellant complains on appeal that the writ never issued although his attorney requested the court by letter of December 20, 1965 to consider signing the writ at that time as no action had been taken by the State's Attorney for Harford County. We point out that the appellant had not been indicted by an illegally constituted grand jury but was charged under a criminal information filed at his request. The information was not affected by the *Showgurow* decision. Further the appellant had an appeal then pending in the Court of Appeals which he made no attempt to dismiss and which was remanded by the Court for further proceedings as a result of *Showgurow* on February 14, 1966 after the administrative procedures necessary to be determined had been resolved. In any event, the appellant was legally detained on a valid information pending against him, and his detention was not rendered illegal by the petit jury which convicted him being unconstitutionally constituted, particularly in view of the fact that the conviction was not void per se but was voidable only at the election of the appellant. Even an illegal detention would not, in itself, entitle the appellant to a reversal of the judgment from which he here appeals or to a new trial. See *Dixon v. State*, 1 Md. App. 623. The contention that the lower court had the right to issue the writ of habeas corpus and the complaint that it did not do so is moot. It is not relevant to this appeal and has no merit with regard to it.

## II

The appellant contends that he was denied a speedy trial. That this contention runs only to the trial resulting in the judgment now appealed was acknowledged by appellant's counsel at the hearing on the motion to dismiss. The original trial

was valid until declared invalid by the appellant. He made an election to invalidate it, after remand of his appeal from the judgment resulting from that trial, on March 9, 1966. Therefore the question of whether he was denied a speedy trial is limited to the period from March 9, 1966 to the date of his trial, August 15, 1966. The question of a speedy trial was not formally presented to the court until May 18, 1966 when the appellant filed a motion to dismiss the information, although on April 15, 1966, his counsel, under the mistaken assumption that it was necessary that the appellant be indicted or another information be filed against him, stated in a letter to the State's Attorney of Harford County, "I would appreciate your taking the necessary steps to expedite his trial in either having him indicted by the grand jury or presenting him under a Criminal Information Report so that his trial may be expedited as soon as possible." But contemporaneous with the motion to dismiss on May 18, 1966, the appellant filed a motion for change of venue, to which he was entitled as a matter of right, Md. Code, (1965 Repl. Vol.), Art. 75, § 44; Md. Rules, 542, 738, and the case was removed. On July 1, 1966 the trial judge stated that although he was supposed to go on vacation the following Wednesday, he would forego it and try the case. Counsel for the appellant replied, "We agreed some time the early part of August would be perfect." Trial was set for August 15, 1966. Arrangements were also made at that time to refer the appellant to the Department of Mental Hygiene for examination. In *Jones v. State,* 241 Md. 599, 608, the Court of Appeals quoted 22A C.J.S. *Criminal Law* § 647 (4) :

"A speedy trial is, in general, one had as soon as the prosecution, with reasonable diligence, can prepare for it ; a trial according to fixed rules, free from capricious and oppressive delays, but the time within which it must be had to satisfy the guaranty depends on the circumstances."

We pointed out in *State v. Long and Nelson,* 1 Md. App. 326, 333, that although an accused has the right to a speedy trial, if he does not demand the right, he waives it. "And even where a defendant had made a proper demand for trial or has moved

for his discharge or dismissal of the proceedings against him, this does not necessarily prevent a ruling that because of subsequent conduct he waived his right to a speedy trial." *State v. Murdock,* 235 Md. 116 at page 121. Under the circumstances here present, we think that the trial was held as soon as the State, with reasonable diligence could prepare for it, and feel that it was so free from capricious and oppressive delays as not to deny the appellant his constitutional rights. We find that the period of about 5 months and 6 days before trial commenced was not unreasonable, particularly in view of the actions of the appellant, and that he was in no wise prejudiced thereby. We hold that the appellant was not denied the right to a speedy trial.

## III

The appellant contends that the trial court erred in refusing to strike for cause a juror because "There was sufficient doubt as to whether or not (he) was a competent juror to try the case without prejudice." The basis of the contention was the responses of the juror on the *voir dire* to the effect that "it would depend a little on the situation" whether he was prejudiced against anyone who has taken the life of another and that he would be a "little" prejudiced against "somebody who is shown" to have been the cause of someone else's death, "before any proof of circumstances takes place." He stated that he did not "think a person should take the life of another person other than self defense." But he made it clear in response to inquiry by the court that any prejudice he may have did not extend to the point where he felt he could not render a fair and just verdict according to the evidence, that he would be able to give the accused the benefit of reasonable doubt, notwithstanding the victim was the accused's wife, that there was no such feeling on his part as to prevent the accused from getting a fair trial at his hands according to all the rules of evidence, that he would be able to give the accused the benefit of a doubt as to whether the accused was sane or insane and that if he was convinced beyond a reasonable doubt that the accused was insane at the time of the commission of the offense, he could find that the accused was not responsible for

the crime. The appellant supports his contention with a citation from *M.L.E.*, Vol. 13, Juries, p. 473:

"A prospective juror who has such personal opinions with respect to the subject matter of the action or proceedings as would influence his verdict is incompetent."

The prospective juror demonstrated to the trial court's satisfaction that his personal opinions with respect to the subject matter were not such as would influence his verdict. The court felt that the juror was not biased in favor of or against the guilt of the appellant in this case, and we agree. In *Bristow v. State*, 242 Md. 283, 288, the Court quoted the definition of what constitutes impartial jurors as set out in *Garlitz v. State*, 71 Md. 293, 300:

"The minds of such men always remain open to the correction of former impressions, and remain entirely impartial, with power to hear and determine upon the real facts of the case, without the least bias in favor of former impressions, whatever they may have been. And therefore, in our present state of society, all that can be required of a juror is that he should be without bias or prejudice for or against the accused, and that his mind is free to hear and impartially consider the evidence, and render a verdict thereon without regard to any former opinion or expression existing in his mind * * *."

In *Zimmerman v. State*, 56 Md. 537, a juror stated that he had formed and expressed an opinion in regard to the guilt or innocence of the traverser. Upon being sworn on his *voir dire* he said that the opinion he had formed would not prevent him from rendering a fair and impartial verdict in the case. The Court held he was a competent juror. We find no abuse in the refusal of the trial court to strike the juror for cause. We note that the appellant exercised one of his peremptory challenges and excluded the juror. We further note that when the jury was sworn, the appellant had nine peremptory challenges remaining.

## IV

Although records of Spring Grove State Hospital pertaining to the appellant were admitted in evidence, the appellant contends that the court erred in not allowing the admission of three documents which were part of those records. The record shows, however, that the court did not refuse the admission of one of them, a voluntary treatment agreement signed by the appellant, dated August 28, 1964. At a conference at the bench, the court overruled the State's objection to that document, saying that it was "simply a matter of corroborating the Defendant's own statement that he went voluntarily to Spring Grove State Hospital." It was designated "Defendant's Exhibit No. 5 for identification." It was handed to a witness for the appellant on one occasion and apparently considered by him in his testimony and on another occasion when defense counsel was reading the medical record into evidence, he said, "I will show you Exhibit No. 5 which has been offered, is that he (the appellant) voluntarily entered the hospital himself. This is a Voluntary Treatment Agreement when he goes to the hospital and signs himself in and this is how he got into the hospital the second time."

The other two documents were a "Physician's Certificate" dated December 12, 1963 signed by two physicians and a "Commitment Certificate" dated December 15, 1963 signed by one physician, whereby the appellant was committed to Spring Grove State Hospital. Both were forms of the Department of Mental Hygiene and certified that the physicians had personally examined the appellant and *"do believe that the said* Ronald Dubs *is insane, and that the disease is of a character which, in my opinion, requires that the above mentioned person be placed in a hospital or institution in which the insane are detained for care and treatment."* That part of the quote here italicized is imprinted on the forms. At a bench conference, the trial court sustained the objection of the State to their admission and told counsel for the appellant that it would not be necessary for him to proffer them before the jury "now that I have ruled on those." The appellant contends that they were properly admissible as records kept in the regular course of business under the provisions of Md. Code, (1965 Repl.

Vol.), Art. 35, § 59. Hospital records do qualify under the statute and are admissible in criminal cases. *Dunn v. State,* 226 Md. 463. The effect of the statute is to provide that such evidence is not inadmissible because it is hearsay, but it does not compel the admission of such evidence if it is otherwise inadmissible. In *Old v. Cooney Detective Agency,* 215 Md. 517 at page 524, the Court of Appeals quoted from *Globe Indemnity Co. v. Reinhart,* 152 Md. 439, a case admitting hospital records as an exception to the hearsay rule prior to the passing of the business records statute: "* * * if its contents upon examination would be open to other objections, such as immateriality, irrelevancy, or that it was an expression of opinion by persons not competent to express an opinion; those objections are not precluded by what we have here said." The trial court found that the bald statement of the certifying physicians that they believed the appellant to be "insane" contained no definition of the term and the mere admission of the documents provided no opportunity to cross-examine the certifying physician "on the question of insanity or his definition of it or anything about it." We agree that the problem arising in regard to such a statement in the documents is whether or not a declaration that a physician believes a person is "insane" for purposes of civil commitment is relevant and material to the issue of the determination of a defendant's responsibility for a criminal act.

At the time of the appellant's trial the definition of insanity to determine criminal responsibility was the the McNaughten-Spencer rule.[1] A person is a responsible agent "* * * if at the time of the commission of the alleged offense, he had the capacity and reason sufficient to enable him to distinguish between right and wrong, and understand the nature and consequences of his act, as applied to himself." *Spencer v. State,* 69 Md. 28, 37; *Thomas v. State,* 206 Md. 575, 582; *League v. State,* 1 Md. App. 681; *Bergin v. State,* 1 Md. App. 74. The

---

1. The test of insanity as a defense in criminal cases was changed by the Acts of 1967, ch. 709, codified in Md. Code (1967 Cumulative Supplement) Art. 59, Sections 7-15. It is applicable to all cases tried or scheduled for trial on and after June 1, 1967 and is not available to the appellant here.

certificates here considered were under the provisions of Md. Code (1964 Repl. Vol.) Art. 59, § 31 and substantially the form as therein provided.[2] In *Salinger v. Superintendent,* 206 Md. 623, a jury had found Salinger, at a criminal trial, insane at the time of the offenses for which he was charged and insane at the time of his trial. The testimony at that trial was that he was insane under the McNaughten-Spencer rule. He was committed to Spring Grove State Hospital as authorized by statute. Some four years later he filed a petition asking to have a jury pass upon his sanity, pursuant to statute. At this civil proceeding it was stipulated that the five psychiatrists who testified agreed that Salinger knew the difference between right and wrong and understood the nature and significance of his acts as applied to himself. They said, however, that if he was freed, he would be a danger to himself and a menace to the person, safety and property of others. The court instructed the jury "that if they found that the petitioner did not have the power or the ability to distinguish right from wrong or to understand the nature and significance of his acts, as applied to himself, they must find him insane; further, that if they found from the evidence that he could distinguish right from wrong and did understand the nature and significance of his acts, as applied to himself, to ask themselves this question: 'If he becomes a free agent will he be a danger to himself, to his own safety, or will he be a menace to the safety of the person and or the property of other people? If you answer that question in the negative, having answered the first question positively, then you should find that he is sane.' The jury were told by the court that if they answered the second question in the affirmative, they would have to find that the petitioner was insane." The Court found that the charge correctly set forth the controlling law. Salinger urged that he had been confined only because a jury found he did not know right from wrong; therefore he must be released now that another jury had found that he did. The Court did not

---

2. A 1964 amendment made the section applicable to alcoholics. A 1966 amendment substituted "mentally ill" for insane throughout the section, substituted "mentally retarded" for "idiotic", "mentally ill person" for "lunatic", "mental illness" for "insanity" and "mental retardation" for "idiocy" in the first sentence thereof.

agree. It said that one found to have been and to be insane in a criminal proceeding is then confined because it is not safe for him or for the community for him to be at large and once a determination of insanity has been made in the Criminal Court, the status of one insane is the same as if the determination had been made otherwise. It said, at pages 628 and 629:

> "This essential fact is not changed because, to avoid the consequences of his act, the accused, under Maryland Law, must be suffering from a mental illness or a disease of a kind and to a degree which brings him within the Spencer rule. Other kinds and degrees of mental illness and disease are, of course, well recognized by medicine and the law and some of them make the victim a menace to society and himself if he is at liberty."

It announced its holding on page 631:

> "We hold that one who has been found not guilty of the charge of crime, because of due determination of insanity in a Criminal Court, has the same status as one confined as insane by virtue of some other procedure established by law and, in order to obtain release, must satisfy a judge or jury of his sanity, not only under the Spencer rule but under the tests generally applied as justifying confinement. This being so, the basis of appellant's original commitment did not alone control the answer to the question of whether he should be released."

See *Alexander v. Superintendent,* 246 Md. 334; *Keiner v. Superintendent,* 240 Md. 608. See also Md. Code (1964 Repl. Vol.) Art. 59, § 8 as amended by Acts of 1963, ch. 43. We think it clear that a person may be committed as insane under the civil procedures esablished by law if he is a danger to himself or to the safety and property of others even if he is able to distinguish between right and wrong and understands the nature and consequences of his acts as applied to himself. So "insane" as it appeared in the certificates could be much broader than the McNaughten-Spencer rule and did not have the same

meaning as "insane" as a defense in criminal cases. There was nothing in the objectionable documents to show or support a rational inference that the term "insane" as therein used had the meaning of "insane" encompassed by the McNaughten-Spencer rule and there was no proffer of testimony to show that it did. The fact that the appellant had been committed to Spring Grove State Hospital was in evidence together with all the other records of that institution pertaining to the appellant. We think the certificates were properly excluded.

## V

The appellant contends that the trial court "committed reversible error in overruling a motion to suppress the testimony of the psychiatrists for the Department of Mental Hygiene who were called as expert witnesses for the State." The basis of the contention is that the examination to determine the sanity of the appellant at the time of the commission of the crime was ordered by the Circuit Court for Harford County on March 9, 1965 in connection with the first trial which the appellant elected to declare invalid under *Schowgurow* and that the trial court did not order such an examination again for the second trial but confined that examination to the question of sanity at the time of the second trial. The appellant cites no authority and we find none, that the expert witnesses could not testify because the examination made of the appellant was made by order of another court and used at another trial. We can find no prejudice to the appellant by failure to provide another examination to determine the same question. By choosing to invalidate the first trial the appellant did not invalidate the examination and the testimony was properly admissible. We find nothing in Md. Code (1964 Repl. Vol.) Art. 59, Sections 7-12 as then applicable to compel a holding to the contrary. See *Hamilton v. State*, 225 Md. 302.

The appellant also contends that the psychiatrists testified to privileged communications and cites Md. Code (1965 Repl. Vol.) Art. 35, § 13A, and particularly subsection (c) (2) under which he urges that the testimony was not admissible because the appellant had not been told the communications would not be privileged. He overlooks subsection (c) (3) which pro-

vides that there shall be no privilege for any relevant communications under the section "in all proceedings, whether civil or criminal, in which the patient introduces his mental condition as an element of his claim or defense * * *." The contention is frivolous.

## VI

The appellant contends that the trial court erred in refusing to grant a motion for judgment of acquittal. He urges that there was insufficient evidence of either first or second degree murder. In order for this Court to overturn a judgment entered on a verdict of a jury for insufficiency of the evidence, it is necessary that there was no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Quinn v. State,* 1 Md. App. 373, 375.

In *Chisley v. State,* 202 Md. 87 at 104-105, the Court said:

"Felonious homicide is divided into two main classes —murder and manslaughter. Murder has been defined as the unlawful killing of a human being with malice aforethought; and manslaughter to be the unlawful killing of another without malice aforethought. * * * The law presumes all homicides to be committed with malice aforethought and to constitute murder. The burden is on the accused to show circumstances of alleviation, excuse, or justification, which will reduce the offense to manslaughter. * * * Where the law divides murder into grades, such a homicide is presumed to be murder in the second degree and the burden is on the State to show that the killing was wilful, deliberate and premeditated, if the crime is to be elevated to first degree murder. * * *.

"The essential distinction between murder and manslaughter, therefore, is the presence or absence of malice. Malice has been defined, in this connection, as the intentional doing of a wrongful act to another without legal excuse or justification. It includes any wrongful act done wilfully or purposely."

We have carefully examined the record and find that there was

sufficient evidence to submit the case to the jury for its determination whether the killing was wilful, deliberate and premeditated and committed with malice. There was evidence that the appellant was angry with his wife because "he had gotten some kind of letter from his lawyer about how they were going to sell their home and the child and everything." On the night of the homicide, the wife of the appellant and a female companion went to a movie and while standing in the back of the theatre were approached by the appellant who came up the aisle. He asked his wife to sit down and talk to him and they sat down toward the front part of the theatre. They sat there talking until a cartoon then showing was ended and the wife came up the aisle to the place where her companion was seated. She said, "Let me in quick." The appellant was following her up the aisle with a gun in his hand. He said to his wife, "If you don't go with me I am going to blow your heart out." The wife and the companion went to the lobby. The companion told the popcorn girl the appellant had a gun, the popcorn girl went for the theatre manager and the manager called the police. The appellant had followed his wife into the lobby and stood talking to her. At that time his hands were in his pockets. A police car pulled up in front of the theatre and an officer started in the door. The appellant stepped back and shot his wife. She died about a half hour later "of massive internal hemorrhage, due to laceration of the heart and right lung by a gunshot wound. The bullet entered the right side of the chest and exited from the right side of the back." The police officer jumped on the appellant, seized the gun, and subdued him. The gun was of a type that could be refired only by pulling the hammer back to recock it and when the officer seized the gun is was recocked. This evidence was clearly not "entirely insufficient" for the case to go to the jury for its determination of whether the killing was murder in the first or second degree and we feel that the power of the trial court to grant a motion for judgment of acquittal was not abused by its refusal to do so on the ground here considered.

The appellant argues that he was intoxicated at the time of the shooting and could not have formed the intent to murder. This Court said in *Michael v. State,* 1 Md. App. 243, 248:

"The accused must do more than simply raise the issue of drunkenness to establish a defense. * * * He must persuade the triers of fact that, under the circumstances, he was so intoxicated as to be incapable of entertaining the specific mental intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted. To establish a valid defense, the appellant must show that he was so intoxicated that he was robbed of his mental faculties, and he will be considered criminally responsible as long as he retains control of his mental faculties sufficiently to appreciate what he is doing. * * *." (citations omitted)

There was evidence that the appellant had been drinking. However, there was also evidence that he walked and talked normally, was neatly dressed, and answered specific questions with relevant answers. The issue in the instant case was not whether the appellant was drunk at the time of the commission of the crime; it was whether he was so intoxicated as to be incapable of forming the requisite intent. It was not error for the trial judge to refuse to grant the motion for judgment of acquittal on the basis of the appellant's intoxication, as there was sufficient evidence from which the jury could have concluded that he was not so intoxicated as to be incapable of forming the intent to murder.

The appellant also argues that the trial court erred in refusing to grant the motion for judgment of acquittal because "there was insufficient evidence to establish, beyond a reasonable doubt, that Appellant was sane at the time of the commission of the alleged offense." We do not agree. The expert witnesses produced by the State testified that the appellant was sane at the time of the commission of the offense. This testimony was sufficient for the trial court to refuse to grant the motion. *Avey v. State,* 1 Md. App. 178, 187-188. The question of whether or not the testimony of the State's experts was "destroyed" on cross-examination is one of the credibility of the witnesses, a matter for the jury.

## VII

The remaining contentions of the appellant pertain to the instructions to the jury.

### The Appellant's Requests for Instructions

The appellant presented seventeen requests for instructions to the trial court and contends that it erred in refusing nine of them.

Request No. 1 pertained to intoxication and intent and the matter was correctly covered by the instructions given. The court said that voluntary intoxication, if it existed, was no excuse for the commission of the crime, but could be considered as to "its effect on the formation and existence of wilfulness, deliberation and premeditation." See *Chisely v. State, supra,* at 106.

Requests Nos. 2, 3, 4, 5, 9 and 10 involved generally the appellant's alleged chronic alcoholism or alleged addiction to alcohol. He apparently takes the position that if he was a chronic alcoholic, the rules of law as to voluntary intoxication are not applicable to him. He requested instructions that an addict is a person who had acquired the habit of using spirituous liquors or narcotics to such an extent to deprive him of reasonable self control, that an alcoholic is a person addicted to alcohol, that when an alcoholic drinks he drinks involuntarily, that if the killing was the result of being intoxicated and the intoxication was involuntary, the verdict must be for the defendant, that the test of involuntary drunkenness is whether there was an exercise of independent judgment and violation in taking the intoxicant, that he was an alcoholic and if the jury find he had been drinking or was under the influence of alcoholic beverages the verdict must be for the defendant. The basis of the requests apparently is that if he be found to be a chronic alcoholic, his drinking is involuntary and is a defense to the commission of the crime.

We do not find the law to be as the appellant contends. "Since the refusal to place intoxication and insanity on the same basis (insofar as criminal incapacity is concerned) is due to the fact that the former is usually a 'voluntarily contracted madness,' it follows that they should be dealt with alike when the intoxi-

cation is involuntary, and such is the law \* \* \* the fact that one is in a state of involuntary intoxication does not necessarily establish criminal incapacity on his part; it establishes only that his derangement is without culpability and hence is to be dealt with the same as if it were the result of mental disease or defect." *Perkins on Criminal Law* (1957) pp. 782-783 and 787. "Involuntary intoxication produced by the acts or contrivance of third persons puts the person affected in the same situation as to criminal liability as ordinary insanity." *Hochheimer. Law of Crimes and Criminal Procedure,* 1st Ed., § 21, p. 12. See also, *Wharton's Criminal Law,* (1957) 1, § 46, p. 113. Thus in Maryland, at the time of the trial of the appellant, if involuntary intoxication were proved, its effect would have been determined by application of the McNaughten-Spencer rule. The question, is however, whether a person shown to be a "chronic alcoholic" or "alcoholic addict," who drinks and becomes intoxicated is involuntarily intoxicated. Drunkenness will be presumed to be voluntary unless some special circumstance is established to remove it from that category. Special circumstances has been held to be in the case of intoxication by mistake, or under duress or from medicine (because the patient is entitled to assume that an intoxicating dose would not be prescribed). *Perkins, supra,* pp. 783-786. And it is noted that *Hochheimer, supra,* § 21, considers involuntary intoxication as "produced by the acts or contrivance of third persons." *Clark and Marshall, Crimes,* 6th Ed., § 6.0, p. 390 makes the flat assertion in stating that the rule that drunkenness is generally no defense does not apply in the case of involuntary drunkenness:

"Drunkenness is not to be regarded as involuntary, within this exception, however, merely because it is the result of an inordinate and irresistible appetite for drink, overcoming the will and amounting to a disease."

*Driver v. Hinnant,* 356 F. 2d 761 (4th Cir. 1966), is not to the contrary except as to the crime of being drunk or crimes symptomatic thereto. *Driver* held that "the State cannot stamp an unpretending chronic alcoholic as a criminal if his drunken public display is involuntary as the result of a disease." p. 765 (It found that alcoholic addiction—chronic alcoholism—was accepted medically as a disease). But it said, p. 764:

"This conclusion does not contravene the familiar thesis that voluntary drunkenness is no excuse for crime. The chronic alcoholic has not drunk voluntarily, although undoubtedly he did so originally. His excess now derives from disease. *However, our excusal of the chronic alcoholic from criminal prosecution is confined exclusively to those acts on his part which are compulsive as symptomatic of the disease. With respect to other behavior—not characteristic of confirmed chronic alcoholism—he would be judged as would any person not so afflicted.*" (emphasis supplied)

As did *Driver, Easter v. District of Columbia,* 361 F. 2d 50 (1966) and *Robinson v. State of California,* 370 U. S. 660, 82 S. Ct. 1417 (1962) cited by the appellant, recognized the inefficacy of a statute when it is enforced to make involuntary deportment a crime. We do not construe them to compel a holding as urged by the appellant here. Certainly murder is not a crime which is compulsive as symptomatic of the disease of alcoholism.

We find no error in the refusal of the requests for instructions here considered.

Request No. 8 was that the verdict must be for the defendant if the jury find from the evidence that he "as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfullness of his conduct or to conform his requirements to the requirements of the law." It did not state the applicable law correctly and was properly refused.

Request No. 11 was that the court charge "that settled insanity is a diseased condition of the mind produced by habitual intoxication." We find no error in the refusal of this instruction. It would appear that the appellant attempted to substitute instructions by the court for expert testimony and even if such testimony were before the jury the ultimate determination would be for it. We know of no controlling rule of law to compel this instruction.

### Exceptions to the Instructions of the Trial Court

The appellant claims error with regard to certain exceptions he made to the court's charge.

First he contends that the court put the "burden upon the jury to determine whether the Defendant was *insane* either at the time of the commission of the offense or at the time of the trial," and he quotes from a part of the instructions concerning the pleas of insanity and "as to alcoholism":

> "In respect to these pleas, the jury are instructed that they should consider them before they consider the plea of not guilty on the merits for the reason that in the event the jury should find that the Defendant was insane either at the time of the commission of the alleged offense or at the time of trial or both, then, and in any of those events it would be unnecessary for the jury to pass upon his plea of not guilty on the merits."

But the court continued immediately thereafter:

> "In respect to these pleas of insanity, the jury is instructed that where insanity is raised as a defense to a criminal charge the law presumes that all persons including those accused of crime are sane. So long as this presumption prevails the State is not required to prove the Defendant's sanity but as soon as some substantial evidence of insanity has been produced by the accused as has been done in this case, then sanity, as I shall hereafter define it, like any other fact material to the question of guilt must be proved by the State beyond a reasonable doubt."

We find no error.

Second, he claims error in the court's statement:

> "As one of the grounds or reasons supporting the Defendant's plea of insanity at the time of the alleged offense he asserts that he was a chronic alcoholic and that intoxication at that time had rendered him insane to the point where he could no longer distinguish between right and wrong and could not understand the nature and consequences of his acts as applied to himself."

He says that he "does not feel that this is the test to be used for a chronic alcoholic or for intoxication as a defense." We have found that it is as to involuntary intoxication. And the court continued:

> "The Court instructs you that voluntary intoxication in itself is no excuse for the commission of a crime but may be taken into consideration by the jury along with other facts in determining the existence of a particular intent and also in determining whether an accused person at the time of the alleged crime, had the requisite mental capacity and the reason to enable him to distinguish between right and wrong and to understand the nature and consequences of his acts as applied to himself.
> "This test, that is the mental capacity last mentioned, is the one and only test as to sanity in Maryland, whether the claimed insanity be alleged to be due to alcoholism, intoxication, or any other cause.
> "In determining whether or not the State has established beyond a reasonable doubt that the accused was sane at the time of the commission of the alleged crime in accordance with the rules governing such determination as above recited, the jury should consider all the evidence which has been produced in this case together with all reasonable inferences properly deducible from the facts established by such evidence as well as the conclusions of the expert witnesses who have testified."

We think the Court correctly stated the rules of law.

Third, the appellant complains that the court failed to instruct as to involuntary intoxication. We considered this in our discussion of the requests for instructions. We think the charge in its entirety adequately covered the applicable law.

Fourth, the appellant states without argument or citation of authority that he excepted to the test of mental capacity given by the court. We find that it correctly stated the rule then applicable.

Fifth, the appellant contends that the court erred in the following charge:

> "If there is any reasonable doubt in which of several degrees the defendant is guilty, he can be convicted of the lowest only of those degrees."

He argues that under this instruction the jury might convict where the burden of proof has not been met as to the lowest degree. However, any possible ambiguity was cured not only by those parts of the charge as to reasonable doubt, but by the next sentence of the charge:

> "If, after consideration of the whole case, the Jury should find that the State has failed to establish the elements and facts necessary for a conviction of either first or second degree murder, or manslaughter or assault, then and in that event their verdict should be 'not guilty'."

We find no error.

*Judgment affirmed.*