# GEORGE BALL *v.* STATE OF MARYLAND

[No. 290, September Term, 1968.]

*Decided June 17, 1969.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas V. Miller, Jr.,* for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Vincent J. Femia, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

PER CURIAM.

In this appeal the sole question is whether there was evidence legally sufficient to sustain the appellant's conviction in the Circuit Court for Prince George's County of storehouse breaking.

According to the owner of an establishment known as Sandy's Liquors, he closed the store about midnight on March 14, 1968; the alarm system in the building was actuated about 1:00 a.m.; and upon returning to the store, at the request of the police, he observed that cinder blocks had been "knocked out" of the rear wall of the building creating a hole "large enough for a person to get through." He testified that the hole led into a store-room containing liquors, wines and beer having a value in excess of one hundred ($100) dollars.

Another witness testified that he was sitting with a companion in their parked car eating a sandwich, after having worked until midnight, when he observed three men get out of a car parked in front of them and proceed "toward the back of Sandy's Liquor Store." Accord-

ing to the witness, "they stayed approximately ten minutes, and then came back to the car and [got] into the car and drove off." Shortly thereafter, "the same car came back from around the corner * * * from the opposite direction from the way he went, and parked behind us." The witness stated that two men then left the car and "went across a field this time" toward the rear of the liquor store "and one stayed in the car." Approximately six or seven minutes later "the burglar alarm went off" and "when the burglar alarm went off * * * the horn blew on the car, one person ran from across the field and got into the car. And at this point the car started up and pulled off around us and turned the corner." The witness and his companion thereupon noted the license number, make and color of the car which they gave to police officers who responded to the sounding of the burglar alarm.

A detective on the Prince George's County Police Force testified that he was cruising in the area when he received on his police car radio the alert that the burglar alarm at Sandy's Liquors was sounding and a description of a car which was leaving the vicinity of the liquor store. He immediately proceeded some three blocks to Sandy's Liquors, there heard the alarm sounding and observed a car fitting the description pull from the curb about twenty-five feet from the liquor store. He stopped the car which was being driven by the appellant, accompanied by his seventeen-year-old nephew, and took them back to the liquor store. There he observed "a hole approximately two cinder blocks high and three cinder blocks wide knocked completely through" and the cinder blocks which had filled the hole were "inside on the floor, and also over top the cases of beer and whiskey that was inside of the establishment." He thereupon arrested the appellant and his companion.

The appellant testified that he and his nephew went to the area to purchase cigarettes and beer at another store; that he parked his car within one hundred feet of Sandy's Liquors; that he went behind Sandy's Liquors to

urinate; that he was sitting in his car when the burglar alarm sounded and, because he had a previous criminal record, thought he should leave immediately. He denied any participation in the crime but admitted that he had been previously convicted of breaking and entering and assault and battery.

It is first contended that the evidence produced by the State simply shows that the appellant was in the general area of Sandy's Liquors and this, in law, is insufficient to sustain his conviction. While it is true "that the mere presence of a person at the scene of a crime is not, *of itself*, sufficient to establish that that person was either a principal or an accessory to the crime," *Tasco v. State*, 223 Md. 503, 509, it is an important element in determining an accused's guilt. *Johnson v. State*, 227 Md. 159, 163; *Shifflett v. State*, 3 Md. App. 550, 553. In the case at bar, however, contrary to the appellant's assertion, we have more than the appellant's mere presence at the scene of the crime. Here the evidence shows that the appellant was driving a car which just prior to his apprehension was seen twice circling the liquor store; the car then stopped, three men alighted and went to the rear of the store where they stayed approximately ten minutes; the men then left the area in the car, only to return and park; and two of the three men returned to the rear of the store. When the burglar alarm sounded minutes later, the driver of the car gave a horn signal and one of the men ran back to the car, which then departed. The car, when stopped as it was leaving the area, was being driven by the appellant. The owner had testified that there was no hole in the rear of his building when he closed the store at midnight and it was there when he returned shortly after 1:00 a.m. On this evidence, we cannot say that the trial judge was clearly erroneous in finding the appellant to be one of the criminal agents. Md. Rule 1086. The lower court was not required to believe the appellant's assigned reason for his presence at the rear of the store or his flight from the scene when the burglar alarm sounded. *Jones v. State*, 5 Md. App.

180; *Chavis v. State*, 3 Md. App. 179. The Court of Appeals and this Court have consistently held:

> "The trier of facts in a criminal case is enjoined by law to give due force to the presumption of innocence, and then to proceed cautiously in weighing the evidence; but he is not commanded to be naive and to believe without scrutiny every glib suggestion or far-fetched fairy tale whether emanating from State or defense. An indispensable ingredient in judgment, in court as well as out of it, is a modicum of common sense. *Berry v. State*, 202 Md. 62, 67.
>
> "To prove guilt beyond a reasonable doubt it is not necessary that every conceivable miraculous coincidence consistent with innocence be negatived." *Hayette v. State*, 199 Md. 140, 144.

See also, *Tasco v. State, supra; Pettis v. State*, 2 Md. App. 651.

It is also contended that "there was no proof of the appellant's 'entry' shown in the attempt to prove the appellant's guilt of storehouse breaking; that under the common law, burglary is the breaking and entering of the dwelling house of another, in the nighttime, with the intent to commit a felony"; and that this concept of breaking, as well as entering, has been carried into the statutory crime of burglary by the Maryland General Assembly in enacting Md. Code, Art. 27, § 30 (a). While we are of the opinion that it could reasonably be inferred that there was an entry into the store, since the cinder blocks had been pushed into the storeroom of the building and the resulting debris was strewn over the cases of liquor stored therein, it must be borne in mind that the appellant was not convicted of common law burglary or statutory burglary as defined in § 30 (a). He was convicted of violating Md. Code, Art. 27, § 32, and that statute is explicit that whoever "shall be convicted of the crime of breaking a storehouse * * * in the day or night * * * with intent to steal * * * goods of another of the value of

one hundred dollars ($100.00) or more therefrom, shall be guilty of a felony * * *." No reference is made anywhere in the statute to "entering" or "entry". This statute was originally enacted in 1809 and at that time only a "breaking" was required; the added ingredient of "entering" was omitted.[1] The statute has been amended many times since its original enactment but on each occasion the Legislature has failed to include the additional requirement of "entry". The appellant concedes that the "entry" requirement is not expressly included in the statute but he argues that "there have been hundreds of cases which refer to this statute as the breaking and entering statute and seem to take for granted that 'entry' is an element of the crime of 'storehouse breaking'";  and that the failure of the Legislature to amend the statute by including the specific requirement of entry "amounts to Legislative approval and ratification of the construction placed upon the statute by the Courts * * *." We find this argument to be unpersuasive for we are not aware of any reported court decision in this State that has construed § 32 as requiring an "entry."

The appellant misreads our opinion in *O'Brien v. State,* 1 Md. App. 94, when he argues that this Court, by implication, held that an entry is required to sustain a conviction under § 32. It is true that in *O'Brien* it was argued that § 32 requires an entry but we found it unnecessary to reach this contention since there was "sufficient evidence to convince the lower court that the appellant not only broke but also partly entered the building * * *."

---

1. Sec. 5, Ch. 138 of the Laws of 1809, provided, in part, as follows:

"Every person, his or her aiders, abettors and counsellors, who shall be duly convicted of the crime of * * * breaking a storehouse, warehouse or other out-house, in the day or night, with an intent to commit murder or felony therein, shall be sentenced to confinement in the said penitentiary-house for a period of time not less than two nor more than ten years, to be dealt with according to law."

The "entry" requirement has, likewise, been omitted from Secs. 30(b) and 342 of Md. Code, Art. 27.

The general rule governing statutory interpretation was stated in *League v. State*, 1 Md. App. 681, as follows (p. 687) :

> "In determining the meaning and scope of a legislative enactment, the Court considers the language thereof in its natural and ordinary connotation. If there be no obscurity or ambiguity on the face of it, there is no necessity for construction, and the language will be accorded its apparent meaning. *Pressman v. Barnes*, 209 Md. 544."

Within this principle, we think it is abundantly clear that § 32 literally contains no "entry" requirement and that this omission was not an oversight on the part of the General Assembly but a studied and deliberate deletion. To adopt the construction sought by the appellant, this Court would be compelled to invade the legislative process by inserting an ingredient or element into the statute which is not there and, in our opinion, was never intended by the General Assembly to be there. This is a function we are without authority to perform. Art. 8, Md. Declaration of Rights.

*Judgment affirmed.*